## THE SIRIUS.

### OLIVER v. THE SIRIUS.

*(Circuit Court of Appeals, Ninth Circuit. February 6, 1893.)*

#### No. 71.

**1. SHIPPING—BOTTOMRY BOND—AMOUNT—ESTOPPEL.**

Recitals in a bottomry bond of the amount of advances secured thereby are evidence of the true amount, but do not estop the obligor from showing that the amount was in fact less.

**2. SAME—ADVANCES ON OBLIGEE'S CREDIT.**

A ship about to depart on a voyage to a foreign country was subject to liens for necessaries furnished by her agent, and for advances made by others on his credit. The agent rendered to the owner's attorney in fact an account which included such advances, and thereupon the attorney, without questioning them, gave a bottomry bond for an amount sufficient to cover the whole account. The bond was expressed to cover certain specified contingent liabilities of the agent, and "moneys paid." *Held*, that it would be construed to include the agent's liability for such advances.

**3. SAME—COMMISSIONS.**

The bond should also be construed to cover commissions earned by the agent upon money collected by him, and credited in the account which was rendered to the attorney in fact.

**4. SAME.**

The obligee had a right to use money received for freight after the date of the bond in payment of wages and other expenses incident to the projected voyage, and to meet other debts contracted for by him for the benefit of the vessel, and not secured by the bond.

**5. SAME—AGENCY.**

A promise by an agent for a vessel, to her owners, that she should not be sent on a voyage unless her freight outward bound amounted to a certain sum, is revoked by a bottomry bond subsequently given by the owner's attorney in fact to secure advances by such agent, in which it is recited that the ship is bound on a certain voyage; and all responsibility for such voyage rests upon the owner of the ship, who cannot sustain a counterclaim to an action on the bond on the ground that the agreed amount of the freight was not secured.

**6. ADMIRALTY—APPEAL.**

An admiralty case on appeal should not be remanded for a new trial because of the erroneous rejection of evidence, since the appeal is itself a new trial, and such evidence, if offered, would be received and considered by the appellate court. The Portland and The State of California, 49 Fed. Rep. 172, 1 C. C. A. 224, distinguished.

**7. SAME—EVIDENCE.**

An appellate court should not receive as new evidence in an admiralty case a deposition by a witness who testified in the trial below concerning the very matters referred to in the deposition, when no ground for introducing additional proof is shown.

Appeal from the District Court of the United States for the Northern District of California.

In Admiralty. Libel in rem upon a bottomry bond filed by Francis B. Oliver against the British steamer Sirius; John Meek, claimant. The district court entered a decree for libelant. The claimant appeals. Affirmed.

E. W. McGraw, (Walter J. Bartnett, of counsel,) for appellant.

Andros & Frank, for appellee.

Argued before GILBERT, Circuit Judge, and HANFORD and HAWLEY, District Judges.

HANFORD, District Judge. This is a suit in rem against the British steamer Sirius upon a bottomry bond given by the owner, through his attorney in fact, to the libelant, as security for advances made on account of the ship, and to indemnify him against liabilities which he had assumed by giving certain bonds to release the ship from custody under process in suits pending against her. The bond in suit was executed at San Francisco April 28, 1892. The recitals and conditions thereof are as follows:

"Whereas, the said steamship is now lying in the port of San Francisco, and bound on a voyage from said port of San Francisco to a port or ports on the west coast of Central America, and back to the port of San Francisco, California; and whereas, said Francis B. Oliver has advanced to said steamer, for the purpose of furnishing her with necessary supplies, and discharging claims against her, the sum of sixteen thousand eight hundred and fifty-seven 94-100 ($16,857.94) dollars; and whereas, said Francis B. Oliver has further become liable in the sum of two thousand ($2,000.00) dollars as a surety upon a bond given to the United States marshal for the release of said steamer Sirius from the custody of said marshal under process issued out of the district court of the United States in and for the northern district of California, in the case of La Compagnie du Boleo against the steamer Scandinavia; and whereas, the said John Meek has promised and agreed to secure the said Francis B. Oliver against any and all liability incurred by him by reason of said suretyship upon the bond aforesaid; and whereas, the said steamship is now again in the custody of the United States marshal, under process issued from

the said district court of the United States in and for the northern district of California, in the case of the Cedros Island Mining and Milling Company against the steamer Sirius; and whereas, the said owner is unable to obtain funds to pay the said claim, and is further unable to furnish the necessary bond to said United States marshal to release said vessel from such custody, by reason of which said vessel is unable to proceed upon her said voyage; and whereas, the said Francis B. Oliver has this day become liable in the sum of five thousand five hundred ($5,500.00) dollars as surety upon the bond required by law for the release of said vessel from the custody of said marshal; and whereas, the said owner has been unable to obtain said advances, and said release of said steamer from the custody of the marshal, from any other person or persons on more advantageous terms, and has accepted the same from said Francis B. Oliver, and agreed, so far as he lawfully can or may, that the said security shall have priority over all claims against the said steamship, whether by himself or by any other person. Now, in consideration of the said advances, and in consideration of the liability incurred by said Francis B. Oliver upon the bonds for the release of said steamer as aforesaid, the said owner hereby agrees to pay to said Francis B. Oliver the sum of sixteen thousand eight hundred and fifty-seven 94-100 ($16,857.94) dollars within ten days after the arrival of said steamer in the port of San Francisco, on the completion of her said voyage, with maritime interest at the rate of eight per cent. per annum from the date of this bond, and he further agrees to pay at said time such further sum or sums as the said Francis B. Oliver may at said time have paid upon the said bonds to the United States marshal, with like maritime interest at the rate of eight per cent. per annum from the date of such payment; and upon like consideration, the said owner further hereby hypothecates the whole of said steamship, her tackle, apparel, and furniture, in bottomry, and agrees that the said steamship is to be employed upon the said voyage to a port or ports on the west coast of Central America, and return to the port of San Francisco, the said risk to commence from the date hereof, and to continue until ten days after the completion of said voyage, and the safe arrival of said steamer in the port of San Francisco. Should, however, the said cases of the Cedros Island Mining and Milling Company against the said steamer Sirius, and La Compagnie du Bolco against the said steamer Scandinavia, not have been determined and settled within ten days after the arrival of said steamer in the port of San Francisco from her said voyage, then this bond shall nevertheless be due as to said sum of sixteen thousand eight hundred and fifty-seven 94-100 ($16,-857.94) dollars, and the said risk shall continue as to the sum of seven thousand five hundred ($7,500.00) dollars until the final determination, adjudication, and settlement of the said cases against said steamer, or until said Meek shall substitute for said bottomry in such regard other security satisfactory to said Francis B. Oliver. And it is further agreed that if the said cases be not finally adjudicated and settled as aforesaid at the time of the arrival of said steamship at the port of San Francisco from her said voyage aforesaid, then the said steamship is to be laid up and remain at some proper and convenient anchorage in the harbor of San Francisco until the final discharge of her obligations under this contract. In consideration whereof, the casualities of the seas are to be on account of said Francis B. Oliver, and the said John Meek doth by these presents hypothecate and assign over to the said Francis B. Oliver the whole of said steamship; and it is hereby declared that the whole of said steamship is thus assigned over for the security of the bottomry taken by said Francis B. Oliver, and she shall be delivered to no other use or purpose whatever until payment of this bond is first made, and the premium and interest that may become due thereon, and the said Francis B. Oliver is to be entitled, in case of loss, to the whole of the salvage of said vessel, which the said obligors promise to pay to said Francis B. Oliver: provided, however, that the said Francis B. Oliver shall not be liable to contribute to or make good any general or particular average, loss, or expenditure, or other charges of a like nature, which may happen to, or be sustained by, or incurred in respect to, said steamship, or her cargo or freight, upon said voyage, in consequence of the perils of the seas or otherwise. Now, the condition of this obli-

gation is such that if the above-bounden John Meek, his administrators or assigns, shall and do well and truly pay, or cause to be paid, to the said Francis B. Oliver, his executors, administrators, or assigns, the full and just sum of twenty-four thousand three hundred and fifty-seven 94-100 ($24,357.94) dollars, being the principal of this bond, together with the premium and interest that shall become due thereon at the time of the safe arrival of said steamship at her port of destination in manner aforesaid, and shall further relieve the said Francis B. Oliver of all liability upon said bonds in the cases of the Cedros Island Mining and Milling Company against the steamship Sirius, and La Compagnie du Boleo against the steamship Scandinavia, and in case of the loss of said steamship shall pay the whole of the salvage to the said Francis B. Oliver, then this obligation to be void; otherwise to remain in full force and virtue."

The owner of the Sirius, by his letter dated at San Francisco September 26, 1891, constituted the firm or mercantile house of Oliver & Co., agents for the ship, with authority to collect her freight money and disburse her accounts. The record fails to disclose whether the libelant was associated with others in business under said name, or whether he alone constituted the house of Oliver & Co.; but from the accounts introduced in evidence, and the transactions shown by the testimony, we must necessarily infer that all the advances which the bond was intended to secure were made by Oliver & Co. pursuant to the agency created by the letter above referred to. The object of this suit is to recover only the amount of $16,857.94, with maritime interest at the stipulated rate, on account of advances; and no claim is now made on account of the libelant's contingent liability as a surety upon the bonds given to the United States marshal. The owner appears as claimant, and defends on the ground that the amount sued for is greater than the amount actually due for advances made prior to the date of the bond, after deducting proper credits; and on the further ground that the amount due on the bond should be reduced by allowance of a counterclaim for damages which he makes against the libelant, based upon alleged losses sustained by reason of the libelant's disobedience of instructions given to him as agent and manager of the ship, and wrongful mismanagement on his part, in sending her on a profitless voyage from San Francisco to Central America. The amended answer thus admits the execution and validity of the bond, and that the libelant is entitled to a decree, but puts in issue certain items charged against the ship in the account of Oliver & Co. as her agents, and raises other issues, as to her credits alleged to have been improperly omitted from said account, and as to said counterclaim. The district court rendered a decree for the full amount sued for, and the claimant has brought the case to this court by an appeal.

After reading the record, we find it unnecessary to consider many of the intricate legal propositions discussed upon the argument of the case, for the reason that, when the undisputed facts are given due consideration, the case may be resolved into one of simplicity, and we rest our decision upon elementary and familiar rules. We hold, in opposition to the contention of libelant's counsel, that the claimant is not estopped by the recitals of the bond from questioning the amount due for advances. We regard the recitals as evidence of the true amount, and as an admission on the part of the

claimant contrary to the averments of his answer, as a receipt signed by him would be evidence and an admission, but of no greater force or binding effect than a receipt or other written declaration made voluntarily and deliberately. This suit is brought by the person named in the bond as the obligee thereof, in a forum which proceeds according to the principles of equity. Now, if in fact the amount stipulated exceeded the amount of the indebtedness for which the bond was given, and was understood by the parties at the time to be a mere penalty, certainly a court of conscience would not, in a suit between the original parties, refuse to receive the light shed by the real facts of the transaction, or decree contrary to truth and the justice of the case. Therefore, in affirming the decree of the district court, we are not willing to say that the libelant should recover $16,857.94 and interest because it is so nominated in the bond. We find, however, that the balance to his credit, upon a fair account of his transactions, as agent of the ship, previous to the date of the bond, is equal to that sum, and that the bond was intended to secure payment of that balance.

For the purpose of restating the account, we adopt as a basis the statement designated as "Exhibit 3," dated April 19, 1892, showing a total on the debit side of $18,046.12, credits to the amount of $1,563.18, and a balance of $16,482.94. This statement was introduced as evidence upon the part of the claimant, and his proctor, upon the argument before this court, while not admitting that it was agreed to as an account stated, insisted that it was in contemplation of the parties at the time the bond was executed, and was the basis for the sum of $16,857.94, recited in the bond as the amount of the libelant's advances, and by the testimony of the libelant this is proven. So there can be no unfairness to either side in taking this statement, and making such corrections as the evidence justifies.

We will now consider in detail the several disputed items in said statement. We reduce the first item for balance, as per account rendered January 19, 1891, from $3,765.71 to $3,724.24, which is by the amended answer stated to be correct, the difference being $41.47. We disallow items of $46 paid on draft of D. Payne, paid on March 10, 1892, and $5 for certified copy of power of attorney, paid April 15, and deduct $10 from item of $28 charged under date of March 31, 1892, which are admitted errors. Disallow item of $25 advanced to Olson March 22, 1892, on the ground that by a preponderance of the evidence it appears that said advance was paid by Alfred Meek, and that the same has not been repaid to him by the libelant. An item of $421.86, premium for insurance on the vessel for the benefit of her owner, has not been fully paid in money. Part of said amount is a mere liability incurred by the libelant; his personal notes, bearing interest, having been accepted by the insurance agents in lieu of cash. An item of $94.87 due the Tubbs Cordage Company for stores, and $3,081.82 due to the Fulton Iron Works for repairs, are also objected to on the ground that the libelant has not paid the same. The evidence in regard to these several items shows that the libelant obtained said stores, and caused the repairs to be made, upon his personal credit, but up to the time of

the trial in the court below he had not paid the bills therefor. In behalf of the claimant it is asserted that the vessel is subject to maritime liens for said stores and repairs, and the injustice of a double liability for the same indebtedness is urged as one of the reasons for the objections to said items. It is also insisted that the terms of the bond preclude a recovery of said amounts in this suit, for the reason that, in plain language, it expresses the two objects for which it was given as being—First, security for money paid; second, indemnity against specified liabilities; and therefore it must be construed so as to limit the right of the obligee to claim under it only the amount due for actual cash payments made prior to its date, and indemnity against his contingent liabilities upon the two bonds given to the marshal. Thus, while refusing to be bound himself by the letter of the bond, as to the amount of his liability under it, he invokes an extremely rigorous rule of interpretation to be applied to the same contract with respect to other provisions, to the prejudice of the obligee. It is the duty of the court, however, to be fair, and to give effect to the contract according to the manifest intent of all its provisions. While no claim of rights under it antagonistic to its express declarations can be upheld, still, to measure accurately the breadth and extent of the rights of the parties, it is necessary to take into account the circumstances existing, and which were operating upon their minds, at the time of the execution of the contract. At that time this foreign vessel was about to depart on a voyage to a foreign country. Necessaries had been procured by the libelant, and furnished to her, for which she was in debt, and without available means to free herself from liens which he was in a position to claim. The very items which we are now considering, were included in his account, and were shown in the statement then before the owner's attorney in fact; and, without raising a question as to these items, the bond was written for an amount sufficient to cover them, as well as other items of indebtedness of the owner which the libelant had not paid, but had assumed, in order to prevent the detention of the vessel by attachments against her. After this bond had been given, the vessel was suffered to make her voyage without any new proceedings being commenced against her. In the light of these admitted facts, we think that it appears very clearly that these several items for insurance premiums, stores, and repairs were regarded as part of the advances made by the libelant as per the recital in the bond, and that the bond was intended to secure the whole of the libelant's account, including these identical charges. We deny that the claimant can rightfully withhold the money due to the libelant upon this bond, or stay the enforcement of the decree herein, until the libelant shall have paid his creditors. We regard the fact that they have so far relied upon his responsibility, and refrained from asserting any claim against the ship, as sufficient assurance that after paying him no second payment will ever be exacted. Nevertheless, for the satisfaction of all parties interested in the vessel, this court will, in its mandate to be sent down, direct the district court to enter an order

requiring the libelant to file vouchers showing the payment by him of said bills at the time of receiving any money that may be collected by process of the court under the decree.

The next objection is to items amounting in the aggregate to $1,004.85, payments to the officers and crew of port wages for time during which the ship was undergoing repairs, which amount the claimant insists was an unreasonably excessive expense, which the libelant, as his agent, should have prevented; and in this connection he complains of error committed by the district court in excluding evidence relating to said items of expense, and on this ground he asks to have the case remanded for a new trial in the district court. We consider that the several rulings of the district court sustaining objections to questions to witnesses called by the claimant, and intended to elicit testimony concerning the conduct of the libelant, as agent for the ship, in retaining the officers and crew under pay while the ship was laid up for repairs, were erroneous. But the claimant has secured a new trial by his appeal to this court. Here the rejected evidence would have been received and considered, if it had been offered; but we are unable to perceive any good reason for remanding the case to the district court to be again tried, with the right of a second appeal and a fourth trial in this court, with additional expenses, which may exceed the amount of any just reduction of the account. In this respect this case differs from the cases of the barkentine Portland and the steamship State of California, (49 Fed. Rep. 172, 1 C. C. A. 224,) which were by this court remanded for the purpose of ascertaining the damages to each vessel caused by a collision. In those cases the amounts in controversy were sufficient to justify the expense, and by the decisions of the lower courts the cases had proceeded to final judgments without affording an opportunity for offering any proof as to the damages sustained by the Portland. They were the first admiralty cases decided by this court, and in the opinion delivered by Judge Deady it was distinctly announced that in an admiralty cause, upon an appeal, the parties are entitled to a trial de novo in this court. That declaration may be inconsistent with the decree awarding a new trial, but some allowance must be made for peculiar features of the cases, and the circumstances which environed the parties and the court at that time. Whether the order made for a new trial was right or not, it should not be regarded as a precedent for future cases, not affected by similar circumstances. The evidence in this case, as it has been submitted in this court, shows that the sums charged in the account as port wages were in fact paid, that said payments were necessary to clear the ship of liens, and does not show misconduct or breach of duty on the part of the libelant in causing said expenses.

The item of $77.45 charged for commissions is objected to on the ground that it cannot be regarded as a sum advanced, and it is said that in this suit money earned cannot be recovered, because the bond was not given for such indebtedness. But this charge is for commissions upon money collected by the libelant as agent for the ship, and credited in this account. A commision merchant has a

right to deduct from funds coming into his hands commissions earned by transacting the business producing such receipts. There being no objection to the item on other grounds, and the money received for freight being credited in full, we allow this item to remain in the account. The other item of $212.50, for commissions on money not credited in this statement, will be striken out. We deduct $7.66 from the item of $147.66 charged for interest, to correspond approximately with the account as now reduced, making the total reductions amount to $347.63. The account, as now restated, shows the following totals and balance:

Debit ............................................................. $17,698 49
Credit ............................................................ 1,563 18

Balance due libelant.......................................... $16,135 31

The evidence shows that at the time of executing the bond the parties understood that the libelant was responsible for other supplies furnished to the ship, for which bills had not been rendered, and, in fixing the amount of the bond, allowance was made therefor. The bills so contracted, and not included in Exhibit 3, together with the libelant's disbursements for expenses of the voyage referred to in the bond, and his lawful commissions, without including the disputed charges for insurance premiums, or interest, or the items admitted to be erroneous, amount to a sum at least equal to the $8,298.86, and other freight bills collected by the libelant subsequent to the date of the bond, plus the excess of the amount sued for over the balance to the libelant's credit per Exhibit 3 as corrected. Further reference to the disputed items in the account charged subsequent to the date of Exhibit 3 is therefore unnecessary. The right of the libelant to use the money received for freight subsequent to the date of the bond in payment of wages and other expenses of the vessel incident to said voyage, and to meet other debts contracted by him for the benefit of the vessel, and not secured by the bond, instead of applying the same as a credit, is beyond question; and in exercising it, in this instance, he acted with fairness. If he had not taken care of said bills, and disbursed the ship, she would certainly be in no better situation; and she might be at this time in custody, to answer the demands of many creditors, for her owner appears to lack either ability or a disposition to provide her with necessary funds.

The counterclaim is founded upon the following facts: In the month of February, 1892, the owner, by telegraph, instructed Oliver & Co. not to dispatch the Sirius on another voyage to Central America unless they would guaranty freight for the round trip to amount to at least £2,500. To this a reply was sent from the office of Oliver & Co. to the effect that, unless £2,000 could be secured for freight outward from San Francisco, the vessel would not be sent; and to this the owner answered, "Accept terms proposed." At the time of this correspondence the vessel was at sea. She subsequently came into San Francisco in a disabled condition, necessitating not only delay, but expenses for repairs, which the libelant provided for. She was also taken into custody by the marshal to an-

swer the demands against her recited in the bond; and an attachment suit against her owner for a debt due to Bell Bros. & Thompson, of England, was threatened. This debt was paid in part, and the balance of it assumed and secured by the libelant, and carried into the above account, for which the bond was given. After this had been done, in April, 1892, the vessel was dispatched on a voyage to Central America, but only secured freight outward from San Francisco to the amount of $8,298.86; and the difference between this amount and £2,000 is what the claimant demands by way of recoupment. As we view this matter, it is of no consequence whether the libelant was or was not cognizant of the telegram sent from his office saying that the vessel would not be dispatched unless freight outward from San Francisco amounted to £2,000. That telegram was not a guaranty that freight to any amount would be secured. It can only be regarded as a promise on the part of the agents for the vessel that they would not, on their own responsibility send the vessel on another voyage without securing the amount specified. Notwithstanding said promise, with the owner's consent the vessel could be sent anywhere, whether she earned freight or not; and, when all the facts as to the events intervening between the dates of said telegrams and the voyage are considered, it appears plain to us that the voyage was undertaken with the knowledge and consent of the owner, and that he must be considered as having assumed the risk of failure to make it profitable. That identical voyage is the one expressly referred to in the bottomry bond now in suit. The bond itself is therefore an express agreement that the voyage should be made, and it necessarily places all the responsibility for it upon the owner himself, and fully answers and contradicts the pretense that the libelant wrongfully employed the vessel for his own purposes, to the injury of the owner.

Having fully considered everything material appearing in the pleadings, evidence, and arguments, we conclude that the decree of the district court must be affirmed, with costs, and it is so ordered; and it is further ordered that the cause be remanded to the district court for the northern district of California for further proceedings in accordance with this opinion.

A deposition of the libelant taken subsequent to the appeal to this court was offered in evidence upon this hearing as new evidence; but we have given it no consideration and we now order that it be suppressed, for the reason that the same witness testified upon the trial in the district court concerning the very matters referred to in said deposition, and no grounds are shown for introducing additional proof at this time. We hold that new evidence, if material and competent, may be introduced upon the trial of an admiralty case in this court, if, for any cause other than a fault of the party offering the same, such evidence cannot be introduced upon the original trial. But, without a showing of a sufficient reason for doing so, this court will not admit new evidence.