**PETRICH v. HANSEN et al.**
**THE ST. FRANCIS.**

No. 13376.

United States Court of Appeals
Ninth Circuit.

April 29, 1953.

Evans, McLaren, Lane, Powell & Beeks, W. T. Beeks, Vaughn E. Evans and Gor- don W. Moss, Seattle, Wash., for appellants.

George T. Nickell, Seattle, Wash., for appellees.

Before HEALY, BONE, and POPE, Circuit Judges.

POPE, Circuit Judge.

This suit in admiralty grew out of a collision between two tuna fishing vessels. Appellees, libelants below, owners of the McKinley, had judgment against the appellants, owners of the St. Francis, for the full amount of the damage to the McKinley, the court holding that the collision and resulting damages to the McKinley "were not due to any fault on the part of the McKinley but were due solely to the fault and negligence of the St. Francis. * * *"

On the day in question, both vessels were engaged in fishing for tuna off the Oregon coast. The sea was calm, visibility was good, and the collision occurred in broad daylight. The court found, from adequate evidence to that effect, that at approximately the same time each vessel sighted and started for the same school of fish, about three miles distant. The McKinley was nearer, but the St. Francis, proceeding at a greater rate of speed, overtook the McKinley and passed her approximately 150 feet from the latter's starboard side. At a point when the St. Francis was slightly ahead of the McKinley, the St. Francis turned to her port across the bow of the McKinley in order to start fishing. The master of the McKinley, when he saw the St. Francis turn to port, reversed his engines, but was unable to bring his vessel to a stop before being struck on the stem by the port bow of the St. Francis. Neither vessel gave a whistle signal during any of this time.

The principal contention of the appellants is that the court erred in finding the collision the sole fault of the St. Francis. The master of the McKinley was operating his vessel by himself, and without any independent or separate lookout. It is argued that the evidence of the master of the McKinley himself discloses that had

there been a separate lookout the master *might* have received a warning that the St. Francis was making a turn sooner than he himself saw the turn. And since he almost succeeded in stopping before the vessels came together, it is said that it is apparent that a very few seconds earlier warning could have avoided the impact. Hence, it is contended, the rule of The Pennsylvania, 19 Wall. 125, 86 U.S. 125, 22 L.Ed. 148,[1] required the court to hold that the failure to have a lookout *could* have been a cause for the collision, and hence that the McKinley must be charged with being at least partly at fault.

The evidence upon which this argument is predicated is as follows: Hansen, master of the McKinley, testified that when the two vessels came to the school of fish, and when the McKinley bow "was overlapping the St. Francis stern a little bit", and the vessels were approximately 150 feet apart, both slowed down to about two or three miles per hour. While the vessels were thus almost parallel, and on about the same course, Hansen "looked up ahead for a minute to see if we could see any fish". Appellant asserts that Hansen's testimony shows that it was at this moment, when he was looking at the fish and not at the St. Francis, that the latter made her turn to port toward the McKinley; that this testimony discloses that when he again looked toward the St. Francis, she had then moved a distance toward him which, at her then speed, would require at least 28.5 seconds. It is said that the physical facts demonstrate his gaze must

have been away from the St. Francis for at least that period of time and this demonstrates that had there been a lookout, the master would have known much sooner than he did that the St. Francis was turning and would have thus sooner started reversing his engines. Since the McKinley was almost stopped when the collision occurred, we are told that we cannot avoid the conclusion that the maintenance of a lookout who might have given warning at the instant the St. Francis started her turn could well have permitted the master of the McKinley to take his action in sufficient time to prevent the vessels colliding. Appellants call our attention to International Rules, art. 29, § 121 of Title 33 U.S.C.A. requiring "a proper lookout" and to sundry decisions basing findings of negligence upon the failure to have a competent lookout other than the officer acting as helmsman.[2]

Hansen was interrogated repeatedly both upon direct and cross-examination as to the precise moment when he first observed the St. Francis turning and whether he saw her commence the turn or whether he did not see that she was turning until she had progressed a considerable distance toward the McKinley. Hansen described these movements and his observations of them in various ways, and there was a considerable difference between the versions given by him at different times during the course of his testimony. In a deposition taken before the trial he had testified as follows: "I wasn't even figuring on him turning, and I did not know it

1. 86 U.S. at page 136: " * * * The liability for damages is upon the ship or ships whose fault caused the injury. But when, as in this case, a ship at the time of a collision is in actual violation of a statutory rule intended to prevent collisions, it is no more than a reasonable presumption that the fault, if not the sole cause, was at least a contributory cause of the disaster. In such a case the burden rests upon the ship of showing not merely that her fault might have been one of the causes, or that it probably was not, but that it could not have been. Such a rule is necessary to enforce obedience to the mandate of the statute."

2. Thus appellant quotes the following from Smith v. Bacon, 5 Cir., 194 F.2d 203, 206: "Furthermore, it is without dispute that at the time of the collision there was no independent or competent lookout other than the relief captain, Maxwell, on duty anywhere on the tug 'Roland' or its tow. Maxwell was acting as helmsman, and although appellees argue that he was also competent to act as his own lookout, the authorities are to the effect that the helmsman or officer in charge of the craft cannot under such circumstances be considered as a lookout."

until I happened to turn my head, and the first thing I know he was on top of me." During his cross-examination he testified as follows: "Q. Well now, just where was he with respect to your vessel when you looked back and saw that a collision was imminent? A. He was just making a turn when I see him, just started coming around. Q. Well, how far around was he? A. Well, I would say he was half ways around. Q. He closed the distance between your vessel and his vessel to about seventy-five (75) feet? A. That is right."

It is noted that the answers just quoted could be construed as meaning that the St. Francis was half-way around when Hansen first saw she was turning, but an analysis of the initial question would also permit an interpretation that this was the moment not when he first saw the turn but when he saw that a collision was imminent. However, elsewhere Hansen's testimony was to the effect that he observed the master of the St. Francis as he turned the wheel and started to make the turn. At one point in his testimony he said in answer to a question by the court directing the witness to "tell us what happened": "Well he gave her a hard wheel and turned her to the port right in front of us." He also testified, "He just started to make the turn when I seen him and he was coming around." Also, "And then I see her when she started to turn."

 There is nothing in the cold record to indicate that Hansen was not an honest witness. The trial judge had an opportunity not afforded to us to judge from the demeanor of the witness and his mode of testifying just which of these possibly conflicting statements most accurately reflected what actually happened. We do not feel called upon, even in this type of case, to substitute any judgment of ours for a determination which we think rightly belongs to the judge who heard the witnesses. Cf. Jones v. Isaacson, 9 Cir., 200 F.2d 409. It is our judgment that the findings of the court below are sufficiently sustained by the evidence.

Appellant specifies error in respect to the refusal of the court to require the witness Hansen, on cross-examination, to make a physical demonstration of the location of the vessels, by placing templates on a sheet of paper and drawing around them. We think the court did not abuse its discretion in taking this action.

Judgment affirmed.