**MISSISSIPPI VALLEY BARGE LINE COMPANY, Libelant-Appellant,**

v.

**COOPER TERMINAL COMPANY, Inc., Respondent-Appellee.**

No. 11229.

United States Court of Appeals Seventh Circuit.

Dec. 3, 1954.

Rehearing Denied Jan. 13, 1955.

Richard P. Conerly, St. Louis, Mo., John C. Roberts, East St. Louis, Ill., Thompson, Mitchell, Thompson & Douglas, Charles M. Spence, Joseph P. Logan, St. Louis, Mo., for appellant.

Wilder Lucas, St. Louis, Mo., Frank M. Rain, Pope & Driemeyer, East St. Louis, Ill., Finley, Lucas & Arnold, Ralph T. Finley, St. Louis, Mo., for appellee.

Before MAJOR, LINDLEY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

On February 16, 1950, the libelant's barge, C. T. 411, sank while being loaded at respondent's dock. The libelant brought this proceeding in admiralty alleging that the sinking was due to respondent's negligence. The District Court after hearing all the evidence held for the respondent. That judgment has been appealed to us.

The libelant first claims that the lower court's findings of fact and conclusions of law are not entitled to the usual weight given them by courts of appeal. Rule 46½ of the Rules of Admiralty, 28 U.S.C.A., requires that "the court of first instance shall find the facts specially and state separately its conclusions of law thereon * * *." After hearing all the evidence the trial judge informed both parties that he was holding for the respondent and requested the attorneys for the respondent to submit proposed findings of fact and conclusions of law. The requested findings and conclusions, as prepared by respondent's attorneys, were adopted practically in toto by the District Court. Libelant contends that such findings and conclusions do not comply with Rule 46½ and therefore should not be accorded the usual respect on appeal. As authority libelant cites The Severance, 4 Cir., 152 F.2d 916, in which the court, after referring to the fact that the lower court had adopted findings and conclusions which had been prepared by counsel, said, at page 918:

"This practice is not to be commended. It has been condemned by many courts as not living up to the provision of Admiralty Rule 46½, 28 U.S.C.A. * * * We do not hold that the practice affords a ground for reversing the decree of the District Court. We content ourselves by observing that these findings of fact and conclusions of law are not, at our hands, entitled to the same weight and dignity which they would have possessed had they represented the unfettered and independent judgment of the trial judge."

We do not think the fact that a busy trial judge having requested counsel for the winning party to prepare findings and conclusions, adopts them, makes the judgment based on them suspect in the appellate court. The holding in The Severance, supra, was very recently cited to support the proposition that even though the trial court in its findings did adopt considerable of the language of the winning party, there was no error if there was substantial evidence to support such findings. Tanker Hygrade No. 24 v. The Dynamic, 2 Cir., 213 F.2d 453.

In an even more recent decision the Supreme Court said:

"In reviewing a judgment of a trial court, sitting without a jury in admiralty, the Court of Appeals may not set aside the judgment below unless it is clearly erroneous. No greater scope of review is exercised by the appellate tribunals in admiralty cases than they exercise under Rule 52(a) of the Federal Rules of Civil Procedure". McAllister v. United States, 75 S.Ct. 6, 8.

This is true whether the court prepared its own findings or adopted those submitted by counsel.

The requirement of Admiralty Rule 46½ is almost identical to that of Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. which applies to law and equity in general. Rule 52(a) provides that in "all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon * * *." Findings of fact submitted by counsel and adopted by the court pursuant to Rule 52(a) are entitled to the same respect as if the court itself had drafted them. O'Leary v. Liggett Drug Co., 6 Cir., 150 F.2d 656, certiorari denied 326 U.S. 773, 66 S.Ct. 232, 90 L.Ed. 467.

■ In Dearborn National Casualty Co. v. Consumers Petroleum Co., 7 Cir., 164 F.2d 332, 333, this court said:

"While the burden and responsibility to make findings of fact and state conclusions of law thereon are primarily upon the trial court, certainly counsel for the parties, especially the prevailing party, have an obligation to a busy court to assist it in the performance of its duty in this regard."

In Koehler v. United States, 7 Cir., 187 F.2d 933, 937, this court quoted and approved that statement as being also applicable in an admiralty case.

[3] The transcript of the evidence in this case shows that the trial judge took an active part in questioning witnesses when a fact in issue was not being properly brought out. It is perfectly clear to us from reading this record that the court was keenly aware of all the contentions made, and did come to its own definite conclusions at the end of the testimony. It was perfectly proper to ask counsel for the successful party to perform the task of drafting the findings and conclusions. If they had not reflected the court's own ideas as to what the findings should be they, of course, would not have been adopted.

■ It may be true, as the libelant claims, that the findings of fact are discursive while they should be categorical. We have no trouble, however, in determining what the trial court found the facts to be, and whether or not they are presented in the most ideal form, we will give them the respect traditionally given findings of the judge who was present when the witnesses testified.

After hearing all the evidence, the court found that the barge was unseaworthy when delivered to the respondent for loading and that the sinking was not due to respondent's negligence. The libelant claims that it turned the barge over to respondent in seaworthy condition; that it was thereafter entirely under the control of the respondent; and that, therefore, under the doctrine of *res ipsa loquitur,* the libelant was entitled to a presumption that the sinking was caused by respondent's negligence.

■ But, as the Supreme Court said in Commercial Molasses Corp. v. New York Tank Barge Corp., 314 U.S. 104, 110–111, 62 S.Ct. 156, 86 L.Ed. 89, the doctrine of *res ipsa loquitur* does not change the burden of proof, it merely places the burden of going forward with the evidence on the party who is best able to produce evidence of what occurred. After reviewing the applicable decisions of the Supreme Court on this same question presented in a similar admiralty appeal, Geotechnical Corp. of Delaware v. Pure Oil Co., 5 Cir., 196 F.2d 199, 205, the court said:

"The effect of them is to hold that the doctrine [*res ipsa loquitur*] is

not a rule of law, but a principle of evidence, useful to aid in making a *prima facie* case, but that it does not change ultimately the burden of proof on the plaintiff to show negligence in the defendant; and when the evidence is all in, the question still is whether all the evidence, in the light of common experience, reasonably shows that the defendant was negligent in some respect that caused the injury, though the particular negligence cannot be pointed out or directly proved."

The trial court employed the doctrine in just this way. When the libelant showed that the barge was under the control of respondent at the time it sank, and introduced evidence tending to show that it was delivered to respondent in seaworthy condition, the court overruled respondent's motion to dismiss and made it necessary for respondent to introduce evidence showing what happened while the barge was in its possession. At the end of all the evidence the court decided that the barge actually was not in seaworthy condition when delivered, and the libelant had not proved that the sinking was caused by respondent's negligence.

This decision was amply supported by the evidence. No one knew exactly why the barge sank; a decision could only be based upon the circumstances surrounding the entire occurrence. The evidence showed that the barge sank very rapidly, and only two theories were advanced that would explain such a rapid sinking. Three of the experts who testified thought that the bottom of the barge was weak and the weight of the very heavy cargo, 672 tons of barytes, being loaded caused it to buckle and admit water. The other expert thought that excessive weight on one end of the barge pulled that end down so far that water came over the side and sank the barge.

If the sinking was caused by a weakened bottom, of course, the respondent could not be held responsible. Even if the cause was excess weight in one end,

however, respondent might not have been solely at fault because a hole was found in the rake tank on the end that sank first. There was no conclusive evidence as to whether this hole was created before or after the barge sank, but if the court thought that the accident was caused by excessive weight in one end of the barge, it would be justified in thinking that water in the rake tank contributed to the additional weight. In fact this was the opinion of the one expert who thought that excessive weight in one end sank the barge. Thus, if the trial court accepted the opinion of three of the four experts, it could not possibly find the respondent liable, and if it accepted the opinion of the fourth expert it could still find that the libelant was equally at fault.

As we view the evidence, the trial court would have been perfectly justified in concluding, as did three expert witnesses, that under the stress of 672 tons of cargo a structural failure occurred in the bottom of the barge. A survey of the barge after it was raised, Respondent's Exhibit No. 6, showed that its bottom had a puncture and a "tear." Libelant explains the puncture as being caused when the barge settled upon another sunken barge, but it was unable to satisfactorily explain the tear. We not only believe that substantial evidence supports the trial court's decision, we feel that the preponderance of the evidence demands it.

The libelant contends that it was error on the part of the court to refuse to receive for probative value testimony by its superintendent that five days after the accident the respondent's crane operator told him that he had used a method of loading that was admittedly negligent. The same testimony was admitted later during respondent's case in an attempt to impeach the crane operator, and the operator denied making the statement. The trial court had all the facts before it. If this was error it certainly was not prejudicial error. Furthermore, the testimony was hearsay and unless it falls within one of the exceptions to the

rule excluding such testimony, it was properly rejected. The only exception argued by the libelant is the exception for admissions. Since the crane operator is not a party to this action, and the statement was not made within the scope of his employment, it was not admissible as an admission. Standard Oil Co. of New Jersey v. Neville, 4 Cir., 48 F.2d 580, 581; P. Dougherty Co. v. United States, D.C., 97 F.Supp. 287, 294, reversed on other grounds, 3 Cir., 207 F.2d 626.

Libelant calls attention to the fact that in admiralty cases courts are not bound by common law rules of evidence. But the court may always disregard evidence that it considers incompetent. Kemsley, Millbourn & Co. v. United States, 2 Cir., 19 F.2d 441.

We find no error in the proceedings below. The decision of the District Court is

Affirmed.