**UNITED STATES of America, Appellant,**

v.

**James P. STAPLES, Bernard D. Oslin, Richard C. Cooper, Appellees.**

No. 15730.

United States Court of Appeals Ninth Circuit.

March 11, 1958.

Keith R. Ferguson, Sp. Asst. to the Atty. Gen., Graydon S. Staring, Jerry W. Mithcell, Asst. U. S. Attys., San Francisco, Cal., Paul A. Sweeney, Asst. Atty. Gen., for appellant.

Roos, Jenning & Haid, Herbert Resner, San Francisco, Cal., for appellees.

Before POPE, FEE and HAMLEY, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

Staples filed a petition on September 4, 1957, for the payment to him of wages and return of his clothing and effects under Admiralty Rule 42, 28 U.S.C.A., on the ground that these had been improperly forfeited for desertion. It was alleged that he was a member of the crew of USNS Escambia and that on May 5, 1957, he left the ship on shoreleave with the permission of the Master, but that the latter nevertheless logged him on that date as a deserter. It is set up that there was in the Registry of the Court $1,-641.20, wages due him at the time he was so logged. Staples alleged the reason for his failure to rejoin the ship was as follows:

"Myself and two others [1] were returning to the ship in a launch, still five or six miles from the ship the launch broke down and we had to be towed back ashore. In the meantime the ship sailed."

On September 6, the United States filed an answer to this claim, which admits the logging of Staples as a deserter, but denies on information and belief allegations of Staples as to the reason why he failed to join the ship. On the same day, the United States also filed a claim for the sum in the registry.

On September 4, also, the United States filed a claim for the sum of $1,-939.16, wages of Bernard D. Oslin, forfeited for desertion upon the same voyage.

On September 10, 1957, Oslin filed a petition for the same amount for wages claimed unjustly forfeited. His allega-

---

1. Apparently Oslin and Cooper.

tion concerning his failure to rejoin the ship is in substance the same as that set up by Staples and quoted above. To this the United States filed an answer in similar terms to that filed to the Staples claim.

On September 4, 1957, also, the United States filed a petition to have paid into the Treasury the sum of $1,800.57, on deposit in the Registry of the Court as forfeited wages of Richard C. Cooper upon his desertion.

On September 19, 1957, Cooper filed his claim for the last mentioned amount, upon the ground that these had been improperly forfeited on the same voyage. His alleged reason for not rejoining the ship is the same in substance as that of Staples, above set out. The United States filed a similar answer to this claim.

There was an order of consolidation of the claims. On September 19, 1957, an order was entered for examination of Oslin before trial at a specified time and place on September 20, 1957. Discovery depositions of Staples and Cooper were obtained September 20, 1957. Motion for judgment by default or striking the petition of Oslin was filed supported by affidavit. But no action was apparently taken on the last motion thereon by the court.

Although the District Court has a standing rule that "hearing of petitions filed by deserting seamen for return of wages and effects be held * * * on the third day following the service of a copy of such petition on the United States Attorney," the hearing was not held until September 27, 1957. The government had been attempting to get the cases continued while gathering evidence, but went to trial on that day. The clothing and effects of each of the seamen had been returned, so that the contest was

over the funds in the Registry of the Court. The government introduced testimony by deposition and orally. It was shown that the men had been logged as deserters before the ship left Sasebo, Japan. Owing to the haste in which preparation for trial was made, the government was unable to introduce all the evidence available and was unable to obtain the deposition of the Chief Engineer of the ship.

No one of the three claimants produced evidence in support of his respective petition. No one of the three testified as to the circumstances relating to failure to rejoin the vessel before it left Sasebo, Japan.

The District Court, on September 30, 1957, awarded the funds to the respective claimants, remarking that the government was not prepared.

■ The government filed appeal from the decision on September 30, 1957. This action transferred the consolidated cases and the funds to this Court. On October 7, a hearing was had in this Court, which resulted in a stay of payment of claims pending outcome of the appeal.

On January 10, 1958, the government filed a petition for the issuance of Letters Rogatory for the examination of certain witnesses in Japan. An affidavit states that, although inquiries were initiated on September 11, 1957, the first definite information contradicting the story of claimants as to the reason for their failure to rejoin the vessel at Sasebo was received by the government from Japan on November 13, 1957. It also appears that the names of the witnesses were not received here until December 30, 1957.

■■ This Court, like all courts of the United States, has inherent power to issue Letters Rogatory.[2] The manner of taking proof is left to our discretion.[3]

2. See Dowling v. Isthmian Steamship Corporation, 3 Cir., 184 F.2d 758, 770; In re Pacific Railway Commission, C.C.N.D. Cal., 32 F. 241, 256; De Villeneuve v. Morning Journal Association, D.C., 206 F. 70, 70–71. See also 28 U.S.C.A. § 1781.

3. "Further proof taken by leave of a Circuit Court of Appeals * * * on an appeal in admiralty shall be taken in such manner as may be prescribed by statute or by said court." Admiralty Rule 45, 28 U.S.C.A.

The claimants urge that Admiralty Rule 32 [4] of this Court constitutes a binding limitation and that the motion of the government is not timely. It must be remembered this is newly discovered evidence and, upon the showing made, vitally necessary to rebut the claims. It was not cumulative, since the government had no opportunity to rebut the excuse for failure of petitioners to rejoin the ship. However, this Court must consider the question of whether it is desirable to take further evidence in this forum.

The practice of receiving evidence in appellate courts has fallen into disfavor.[5] This tendency has been notable for over a century. In recent years, the practice has been so attenuated that now it has for all practical purposes ceased to exist. The reason for this lies in the fact that at present in all courts the taking of oral testimony in open court is the rule rather than the exception. In admiralty, where practice and procedure were governed in medieval times by the principles of the civil law, the proof was almost exclusively by deposition or by examination in camera. In modern times, however, the proof in admiralty has been presented orally in open court with supplements by deposition. This dynamic change has had important consequences. Since the trial courts now generally have the opportunity to hear the witnesses testify and to observe their demeanor while testifying, appellate courts tend to give far greater weight to findings so based.[6] While it is true that most courts of appeal give lip service to the doctrine that a trial de novo before appellate judges in admiralty is possible, the unconscious repetition of this refrain has generally no significance in reality. This Court has claimed the right to draw inferences from the evidence contrary to finding of the court of first instance.[7] But the overwhelming weight of recent authority in appellate courts accords to findings of trial judges in admiralty the same respect given to those of courts in other civil cases. Such findings are set aside only when clearly erroneous or where on the record as a whole it is clear a mistake has been made.[8] In respect to findings of fact, the syncretism of the doctrines of admiralty to those governing other civil cases is apparently complete.[9] In respect to findings of fact,

4. "1. Upon sufficient cause shown, this court * * * may allow either appellant or appellee to * * * make new proofs. Application for such leave may be made at any time after the perfecting of the appeal to this court, and within 15 days after the filing in this court of the apostles and upon at least 5 days' notice to the adverse party or his attorney of record." Rule 32, Rules of the United States Court of Appeals for the Ninth Circuit, 28 U.S.C.A.

5. Compare: Smith v. Acadia Overseas Freighters, Ltd., 3 Cir., 202 F.2d 141; Korthinos v. Niarchos, 4 Cir., 184 F.2d 716, 719; Petterson Lighterage & Towing Corporation v. New York Central Railroad Co., 2 Cir., 126 F.2d 992, 995–996. The view of older judges is set forth in the following cases: Conklin v. City of Norwalk, 2 Cir., 270 F. 68; Red. River Line v. Cheatham, 5 Cir., 60 F. 517, 520; The Sirius, 9 Cir., 54 F. 188, 196. See also Cutler v. The Steamship Columbia and Owners, 1 Or. 101.

6. For some of the more recent expressions in the Ninth Circuit, see Hertz v.

Consolidated Fisheries, Inc., 9 Cir., 213 F.2d 801, 803; Oaksmith v. Garner, 9 Cir., 205 F.2d 262, 265; Petrich v. Hansen, 9 Cir., 204 F.2d 261, 263; Griffith v. Gardner, 9 Cir., 196 F.2d 698, 701; Larsson v. Coastwise (Pacific Far East) Line, 9 Cir., 181 F.2d 6, 9, certiorari denied 340 U.S. 833, 71 S.Ct. 55, 95 L.Ed. 612; Rogers v. Pacific-Atlantic Steamship Company, 9 Cir., 170 F.2d 30, 32. See also Braithwaite Lands Liquidation Co. v. The Ben Hur, 5 Cir., 212 F.2d 851, 852; Petterson Lighterage & Towing Corporation v. New York Central Railroad Co., 2 Cir., 126 F.2d 992, 994, 997–998.

7. Petterson v. Alaska Steamship Co., 9 Cir., 205 F.2d 478, 479, affirmed 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798, rehearing denied 347 U.S. 994, 74 S.Ct. 848, 98 L.Ed. 1127.

8. McAllister v. United States, 348 U.S. 19, 20, 75 S.Ct. 6, 99 L.Ed. 20.

9. See Utility Service Corporation v. Hillman Transportation Company, 3 Cir., 244 F.2d 121, 123; McAllister Lighterage Line, Inc., v. The Pejepscot, 2 Cir., 243

at least where the trial court has heard witnesses, the theory of trial de novo is evanescent even in admiralty.[10]

■ These factors necessarily influence the result of our consideration of the instant case. The trial court has already heard some witnesses. Even though the testimony sought to be taken is to be by written interrogatory, nevertheless it may be weighed against the oral testimony of other witnesses. Under these circumstances, this Court should not exercise the primary function of balancing the evidence.

However, this Court has undoubted power to require new evidence to be admitted in an admiralty case, if the ends of justice shall require.[11] And, if an issue has been inadequately disposed of by the District Court, this Court has the authority to direct the taking of additional evidence there.[12] Since it is apparent that the evidence sought by the government is newly discovered and material to an essential issue and that there has been no lack of diligence, the District Court is directed to issue appropriate process to take the testimony of the named witnesses in Japan and to take further evidence as to the logging of the claimants with regard to the cause of the failure of each to rejoin the ship at Sasebo, Japan, and such other issues as may be appropriate.

The appeal in admiralty has the effect, as before noted, of transferring jurisdiction of each of the claimed funds to this Court. This Court hereby reserves jurisdiction of these funds and of this cause until the evidence has been taken and new findings made by the District Court.

The appeal is stayed in the meantime, with permission to the parties to proceed upon any issues then involved if further consideration of this appeal should be necessary.

F.2d 794, 795; Hartford Accident & Indemnity Co. v. Gulf Refining Co., 5 Cir., 230 F.2d 346, 350; Benton v. United Towing Co., 9 Cir., 224 F.2d 558; Mississippi Valley Barge Line Co. v. Cooper Terminal Company, 7 Cir., 217 F.2d 321, 322–323; United States v. Standard Oil Company of Kentucky, 6 Cir., 217 F.2d 539, 540.

10. Some procedural vestiges of the theory of trial de novo in appellate courts remain firmly grounded. See Richfield Oil

Corporation v. United States, 9 Cir., 248 F.2d 217, 225, note 7; Untersinger v. United States, 2 Cir., 181 F.2d 953, 956; F. E. Grauwiller Transportation Co. v. Exner Sand & Gravel Corporation, 2 Cir., 162 F.2d 90, 92.

11. Admiralty Rule 45, 28 U.S.C.A.

12. See Dixon v. United States, 2 Cir., 219 F.2d 10; Smith v. Acadia Overseas Freighters, Ltd., 3 Cir., 202 F.2d 141; Jones v. Isaacson, 9 Cir., 200 F.2d 409, 410; The Carbonero, 1 Cir., 106 F. 329.