ROBERT J. JONKER, CHIEF UNITED STATES DISTRICT JUDGE
Introduction
The matter is before the Court on Defendant United States' Motion for Issuance of Letters Rogatory. (ECF No. 13). The Government requests the Court issue a Letter of Request to courts in Israel under the Hague Evidence Convention for documents and information from an Israeli company, Dexcel Pharma Technologies Ltd. ("Dexcel") and from four of Dexcel's current or former officers, including the company's CEO. All information targets are located in Israel. Perrigo opposes the motion because it believes the time and expense involved are not worth the relatively limited light that might flow from the effort. The Court has reviewed the motion and accompanying brief, Perrigo's response, and the Government's reply. Because the present record fails to justify the added delay and cost that will follow from a Letter of Request, the Court will DENY the Government's motion.
Legal Standard
"Letters rogatory are the means by which a court in one country requests a court of another country to assist in the production of evidence located in the foreign country." Yellow Pages Photos, Inc. v. Ziplocal, LP , 795 F.3d 1255, 1273 (11th Cir. 2015) (citing United States v. El-Mezain , 664 F.3d 467, 516-17 (5th Cir. 2011) ). A court has inherent authority to issue letters rogatory. See United States v. Reagan , 453 F.2d 165, 172 (6th Cir. 1971)
*742 (citing United States v. Staples, 256 F.2d 290, 292 (9th Cir. 1958) ). A court further maintains discretion over whether to issue such a letter. Abraxis BioScience, LLC v. Actavis, LLC , No. 16-1924, 2017 WL 2293347, at *2 (D.N.J. May 25, 2017). Letters of Request for depositions in a foreign country are authorized by FED. R. CIV. P. 28(b)(1), but courts often review requests under the principles of FED. R. CIV. P. 26(b) and (c), applicable to all forms of discovery. Asis Internet Servs. v. Optin Global, Inc. , No. C-05-05124, 2007 WL 1880369, at *3 (N.D. Cal. June 29, 2007) (Spero, M.J.).
Of course, "there must be some good reason to deny a party the particular type of judicial assistance it seeks." 8A WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2083 (3d ed. 2010). Reviewing courts have denied Letters of Request for, inter alia , being overly broad or unlikely to lead to the discovery of relevant evidence. See Yellow Pages Photos, Inc. , 795 F.3d at 1273-74 (collecting cases). In the Court's view, the guiding principles must be the proportionality considerations applicable to all discovery, FED. R. CIV. P. 26(b), as further informed by the duty of the parties seeking third party discovery under Rule 45(d) to avoid undue burden and expense.[1]
Discussion
A. The Issues to Be Litigated
This is a tax refund lawsuit. Perrigo is seeking a refund of about $163.5 million in taxes it allegedly overpaid the Government. The underlying revenue stream that generated the tax liability imposed by the Internal Revenue Service was approximately $957 million in sales in the United States of Perrigo's omeprazole product, a store branded, generic alternative to "Priolosec Rx" for acid reflux. Dexcel manufactured the drug in Israel. Perrigo[2] distributed it here in the United States. Perrigo believes the way that it structured the affiliated companies, relevant transactions, and cash from the sales properly avoided some or all of the tax liability imposed. The United States disagrees.
There are four main issues to be litigated. The first three are basic common law questions: namely, in structuring the business and reporting its tax position did Perrigo 1) create sham entities; 2) engage in sham transactions; or 3) improperly assign income among affiliated entities, through improper transfer pricing or otherwise? The fourth issue is Code based: namely, is it arbitrary and capricious for the Commissioner to reallocate all or most of the sales revenue to a domestic taxpayer under Section 482? The parties agree that Perrigo has the burden of proof on all issues.[3]
B. The History and Status of the Litigation
After the Government disallowed Perrigo's refund claims for several tax years, Perrigo paid the disputed taxes and then brought this case on August 15, 2017. The *743 Amended Complaint seeks to recover for alleged overpayment of taxes, penalties, and interest for the 2009 through 2012 tax years. (ECF No. 38). The Government's Answer, broadly speaking, denies Perrigo is entitled to the relief it seeks. The Court convened a Rule 16 scheduling conference on December 20, 2017, and the First Case Management Order issued on December 22. Under the Case Management Order, formal discovery in this case has just gotten underway. Rule 26(a)(1) disclosures were due only a few weeks ago on January 8, 2018, and completion of fact discovery is not scheduled until August 31, 2018. (ECF No. 20, PageID.415). While the Court expects the parties to adhere to that deadline, the Court has scheduled a second Rule 16 conference in July to discuss whether fact discovery needs to be extended, and to further address expert discovery.
Though this case may be relatively new, the parties have been working towards litigation for some time. The roots of this litigation begin with a 2005 Supply & Distribution Agreement between Perrigo and Dexcel related to a generic omeprazole product to treat acid reflux. After this agreement was signed, Perrigo undertook a series of business dealings within its corporate family. Those dealings are at the core of the instant suit. Before this suit was filed, the dealings were also examined by the Government in several rounds of audits that reviewed Perrigo's tax returns for the 2007 through 2012 tax years.
As one would expect, the Government sought a large amount of material from Perrigo in connection with its audits, and it appears Perrigo cooperated by providing documents and making its representatives available for interviews. As part of the auditing process, the Government also requested information from Dexcel under the United States-Israel Tax Treaty. Dexcel answered that request in a submission from Dov Avraham, Dexcel's Chief Financial Officer in 2013. Having obtained information from both inside and outside of Perrigo, the Government proceeded with its audit and on May 5, 2015, the IRS designated issues relating to Perrigo's omeprazole product in the 2009 and 2010 tax years as ready for litigation. According to the IRS' website, this meant that counsel at the IRS had "[e]nsure[d] that the issue ... [was] factually developed to its fullest, including document production, and key taxpayer and third party witness interviews[.] INTERNAL REVENUE MANUAL § 33.3.6.3.1(1)(B) (Aug. 11, 2004), https://www.irs.gov/irm/part33/irm_33-003-006.
C. The Proposed Letter of Request
The Government proposes the Court issue a Letter of Request with a wide-ranging scope. The letter itself spans fifteen pages, and its attachments extend over ninety pages. The proposed letter seeks documents and communications from Dexcel relating to twenty-two separate areas including, inter alia , the development of the omeprazole product, clinical trials, patent lawsuits, efforts to obtain approval from the FDA, expectations and projections for sale, packaging and labeling of the product, purchase orders, invoices, shipping documents, and documents and communications related to the agreements entered into between Dexcel and Perrigo. (ECF No. 13-2, PageID.125-127).
The request for information from the four individuals is similarly far-reaching. It seeks, among other things, information related to Dexcel's manufacturing and marketing of omeprazole products in the United Kingdom and Israel, the challenges or advantages in selling the product, a timeline of the process Dexcel went through in developing the omeprazole product for marketing in North America, all written and oral communications with Perrigo regarding the development of the omeprazole product for sale in the United States, *744 a comparison of the proposed dosage with other dosages approved by the FDA, operational and financial projections, and information on how Perrigo and Dexcel arrived at "pack sizes." (ECF Nos. 13-10, 13-11, 13-12, 13-13).
The breadth of the request is sweeping and covers topics that seem rather far afield. Moreover, the most potentially germane requests are duplicative to the extent that most of the requests seek communications with Perrigo, meaning that the Government should be able to get most of the information from the Perrigo side of the communications.
D. The Proportionality Factors
Based on all matters of record, and applying the above legal standards, the Court finds the motion should be denied at this time. For one thing, the scope of communications the Government seeks is remarkably broad. This is especially so when viewed against the multiple audits, the tax treaty requests, and the designation of this case by the IRS as ready for litigation. The Government understandably seeks to obtain as complete a picture as possible. But at its heart, this case is about the business dealings and transactions within the Perrigo family. This case does not directly concern Dexcel, and courts have an obligation to ensure requests to third parties are not unduly burdensome. Cf. American Elec. Power Co., Inc. v. United States , 191 F.R.D. 132, 136 (S.D. Ohio 1999) (noting, in the context of Rule 45, that courts consider factors such as relevance, need for the documents, breadth of the request, time period, and the particularity of the documents described); 9A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2463.1 (3d ed. 2008) (stating that in considering the reasonableness of a request under Rule 45, a trial court should consider whether the information is necessary and whether it is available from any other source). This is especially significant when the Government has already used the tax treaty with Israel to obtain some information from Dexcel.
Furthermore, a large portion of the proposed Letter of Request seeks communications that Dexcel had with Perrigo. There is no reason to believe that these communications cannot be obtained from Perrigo through traditional discovery at a much greater speed and lesser cost. Indeed, by the Government's own admissions, the Letter of Request would greatly add to the time and expense of this lawsuit. Counsel for the Government anticipates it would take between six months to one year to obtain the requested information. (ECF No. 15-1, PageID.233). The Government's motion would multiply the cost, delay, and complexity of this already complicated case without the prospect of improving the overall mix of information available for adjudication.
Before jumping into an expensive and time consuming endeavor, it also makes sense to exhaust less costly alternatives first. This includes seeking, through traditional party discovery, the communications that Perrigo has in its possession from Dexcel. But it could also include other informal means, such as simply asking Dexcel whether it would be willing to provide some of the information voluntarily. The Government could also ask whether Dexcel's representatives, who appear to have reason to be in the United States on a regular basis, would be willing to be interviewed on one of these trips.[4] While such a request might seem odd or naïve, at *745 first blush, a Letter of Request is not much more than a formal way of doing the same thing. Neither the Government nor this Court can compel compliance with an international Letter of Request.
Finally, while the information the Government seeks may have some degree of relevance, the substantive issues of this case have a lot more to do with what Perrigo, its employees, and its accountants were thinking and doing in setting up the various entities and transactions within the Perrigo family. Dexcel is by all accounts an arm's length business partner of Perrigo. Thus to the extent the Government is pursuing information from Dexcel about its own thoughts concerning the omeprazole product or what Dexcel thought Perrigo was trying to do, this information has little bearing on this case. It is worth remembering that Perrigo has the burden of proof. If Perrigo believes it can present its case without evidence from its arm's length business partner, then perhaps the Government, as the responding party, should wait to see what Perrigo has before deciding whether it is likely to find the information it believes is critically damaging to Perrigo's case from Perrigo's business partner. If information undermining Perrigo's case is out there, the Court expects it is more likely to come from producers that are not Perrigo's valued business partners.
With all the above in mind, the Court turns to the language of Rule 26, which provides that:
Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.
FED. R. CIV. P. 26(b)(1). Applying these factors, the Court presently concludes the Rule 26 considerations weigh against granting the motion. While the amount in controversy is certainly high, the importance (or lack thereof) of documents from an arm's length business partner about Perrigo's internal business decisions, the access to relevant information through traditional discovery and the tax treaty, the decision to designate this case for litigation, and the burden of time and expense on this case, all outweigh any potential benefits of the information the Government seeks.
Conclusion
On the present record, the Court concludes the Rule 26(b) proportionality factors weigh against issuing a Letter of Request to the courts in Israel.
ACCORDINGLY, IT IS ORDERED that the Government's Motion for Issuance of Letters Rogatory (ECF No. 13) is DENIED at this time.

The Court realizes that Rule 45 does not apply by its terms to Letters of Request to a foreign power. But the Court sees no reason that a foreign power should be treated worse than a domestic enterprise in considering discovery for a dispute that does not directly concern it.

The Court is using "Perrigo" in an entirely generic sense to refer collectively to any and all enterprises affiliated with Perrigo. The Court uses a simple, all-inclusive reference for ease of readability in an opinion that does not require more precision in entity designations.

Other issues presently joined involve whether Perrigo was obligated to capitalize, rather than expense, certain patent litigation expenses it incurred in defending claims filed against it by patent holders in the wake of Abbreviated New Drug Applications (ANDAs) and Paragraph IV non-infringement certifications for generic drugs Perrigo hoped to sell.

Dexcel and its representatives are non-party witnesses, and so the Government can communicate with them without involving Perrigo. Of course, Dexcel is undoubtedly represented, and so Dexcel's own counsel would have to consent. The Court also notes that a formal Rule 45 subpoena might arguably be an available compulsory process if the representatives are tagged with service while in the United States. Cf. Burnham v. Superior Court of Cal., Cnty. of Marin, 495 U.S. 604, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990) (holding that service of process to a natural-person defendant briefly present in the jurisdiction is sufficient to confer general jurisdiction). The Court recognizes this is an untested avenue, but even the risk of an enforceable Rule 45 subpoena premised on tag jurisdiction may motivate Dexcel and its attorneys to negotiate a voluntary disclosure or interview.