UNITED STATES of America,
Appellant,

v.

STANDARD OIL COMPANY OF KEN-
TUCKY, Appellee.

No. 12095.

United States Court of Appeals
Sixth Circuit.

Dec. 20, 1954.

Louis E. Greco, New York City, J. Leonard Walker, Louisville, Ky., on brief, for appellant.

Louis Seelbach, Louisville, Ky., Chas. G. Middleton, Louisville, Ky., on brief, for appellee.

Before ALLEN, McALLISTER and STEWART, Circuit Judges.

PER CURIAM.

The appellant, owner of the tanker "Homestead," filed a libel in admiralty against the appellee to recover damages in the sum of $2,000,000 for the total loss of the vessel, allegedly caused by appellee's negligence. This appeal followed the district court's dismissal of the libel.

On the afternoon of August 5, 1946, the "Homestead" was moored port side to appellee's dock in Jacksonville, Florida, and had commenced to discharge a quantity of gasoline consigned to appellee, by means of an eight-inch hose leading from a riser on the vessel to a pipe connection on the dock. This hose had been furnished by the appellee, and two employees of the appellee were present on the dock. Pumping operations continued without incident for some thirty-five minutes.

Then a sudden squall blowing against the "Homestead's" port side forced the vessel away from the dock and caused the breast line to part. The resulting strain on the hose caused the flange at the dock pipe connection to break. The vessel's pumps were stopped in one or two minutes, but, in the meantime, over a hundred barrels of gasoline were discharged through the hose onto the dock and into the water. Ten or fifteen minutes later lightning struck the water near the bow of the vessel, igniting the gasoline and causing a fire which spread to the vessel and resulted in its total destruction.

The district court found that the evidence failed to show that the hose or

flanges were defective, that the hose was improperly coupled to the shore connection, that the hose was too short, or that the appellee failed to take any possible step to disperse or remove gasoline from the area after the breaking of the flange. The court also stated, in oral findings, "I find no failure to exercise ordinary care to give warning of the danger." Accordingly, the district court concluded as a matter of law that the evidence "was insufficient to establish negligence on the part of the Respondent on any of the specific charges of negligence or otherwise," and it dismissed the libel.

The appellant insists that the two employees of appellee who were on the dock violated a duty to warn the vessel's master of the danger caused by the sudden squall, and that the district court should have so found. We do not agree. The evidence showed that the squall came up very quickly, and that the two men probably had no time to warn anybody, assuming they had a duty to do so. It was raining, and there is no evidence that there was anyone on the deck of the vessel to hear a warning if given. Moreover, and more importantly, the safety of the vessel was the responsibility of her master and officers. The "Homestead" was moored with her own lines, and it was the duty of those in charge of her to keep her secure to the dock and to know of the possibility of squalls and of their potential effect.

Although an appeal in admiralty is said to be a trial *de novo*, it appears that the scope of our review of the district court's factual findings is probably no broader than in other civil actions, and that we should not disturb such findings unless they are clearly erroneous. McAllister v. United States, 1954, 348 U. S. 19, 75 S.Ct. 6; cf. Walter G. Hougland, Inc. v. Muscovalley, 6 Cir., 1950, 184 F.2d 530; Boston Ins. Co. v. Dehydrating Process Company, 1 Cir., 1953, 204 F.2d 441. In any event, we think the district court's findings in the present case are clearly correct.

The judgment is accordingly affirmed.