**UNITED STATES of America,**
**Appellant,**

v.

**Raymond PUSCEDU, Appellee.**

**No. 15367.**

United States Court of Appeals
Fifth Circuit.

June 30, 1955.

Rehearing Denied Aug. 10, 1955.

---

**6**

Malcolm R. Wilkey, U. S. Atty., James T. Dowd, Asst. U. S. Atty., Mayo J. Thompson, John R. Brown, E. D. Vickery, Houston, Tex., Royston & Rayzor, Houston, Tex., of counsel, for appellant.

Arthur J. Mandell, Houston, Tex., for appellee. Mandell & Wright, Houston, Tex., of counsel.

Before HUTCHESON, Chief Judge, JONES, Circuit Judge, and WRIGHT, District Judge.

HUTCHESON, Chief Judge.

As appellant sees it, this appeal from a decree in admiralty, finding respondent liable for damages sustained by plaintiff as a member of the crew of the Steamship Meridian Victory and awarding him a recovery of $70,479.35,[1] including $3424.00 for maintenance and cure, presents a single basic issue for our decision. This, as appellant states it in his brief is as follows:

"In view of the uncontradicted testimony that money has an earning power of substantially 6%, could the trial court find that 3% was a proper date of discount in computing the present value of Puscedu's damages for impaired future earning capacity, simply because of Puscedu's lack of education and the assumed consequent inability to select proper investments?"

Libellant, however, sees the matter quite differently. As he sees it, respondent's appeal presents simply the question whether the record is such that, under Admiralty Rule 46½, 28 U.S.C.A. and the McAllister case, 348 U.S. 19, 75 S.Ct. 6, the awards made by the district judge must be deemed excessive, and his findings set aside as clearly erroneous, while his cross-appeal presents, as the reverse side of the shield, whether the awards must be deemed inadequate and the findings set aside as clearly erroneous for that reason.

For the reasons hereafter briefly stated, we are of the opinion that the record furnishes no basis for a finding either, as claimed by appellant, that the awards are excessive, or, as claimed by appellee, are inadequate, none for finding that the judgment should be set aside. On the contrary, we think it plain, that as might be expected of advocates, that the counsel for each side has approached the prob-

1. Itemized as follows:

| | | | |
|---|---|---|---|
| "(a) For loss of wages from the date of injury to Jan. 30, 1955 | $ 7,064.35 | $8.00 per day, from Nov. 28, 1953, to Jan. 30, 1955 | 3,424.00 |
| (b) For physical pain and mental anguish | 15,000.00 | (d) For loss of earning capacity from Jan. 30, 1955 and in the future | 44,991.00 |
| (c) For maintenance and cure at the stipulated rate of | | | $70,479.35" |

lem of determining a proper award with a gaze so foreshortened by his intense self seeking as to see the problem not in focus and as a whole but out of focus and distorted by partisanship and interest.

The district judge fully realized the difficult and delicate nature of the problem he was confronted with, to make libellant as near whole as a just and fair financial award could do it. He conscientiously assumed and painstakingly discharged his burden, and, in a carefully considered opinion, canvassing all the relevant considerations, making all due allowances for conflicting points of view, and giving his reasons for doing so, determined what a fair award should be.[2]

It is, we think, to make the tail wag the dog, and it will not do, for appellant to seize upon a footnote to the judge's opinion:

"Respondent insists that the yield should be calculated at not less than 5% but considering Libellant's lack of education and inability to select proper investments, I think the 3% figure is proper."

as dominating, indeed constituting the whole opinion and proving the award erroneous.

The approach of the appellee is not differently conceived or better taken. Treating the admeasurement of damages as a more or less mechanical matter, rather than as it is, a matter requiring a broad understanding and the exercise of informed judgment, appellee, by what he denominates his cross-appeal, undertakes, without warrant we think, to decry the processes employed and the results reached by the district judge, and by the use of incorrectly assumed premises to arrive at conclusions which are contrary to those of the district judge and which find no support in the record. This disposition of the appeal and cross-appeal makes unnecessary discussion of subordinate questions raised with respect to tender and estoppel. The judgment is right. It is affirmed.

2. "Balancing it out, I think, conservatively, that Libellant reasonably could have expected to earn $300 per month during the period from his injury to the time of trial (April 30, 1954), and for the nine months of cure thereafter—a period of approximately 26 months for which he will be awarded $7800, less $735.65, unearned wages paid from Sept. 19, 1952, to Dec. 2, 1952, (and of the Meridian Victory's voyage). The sum of $44,-991.00 invested at 3% over a period of 38 years will yield the $2000 per year of Libellant's impaired future earning capacity.[2]

(Note 2. "Respondent insists that the yield should be calculated at not less than 5% but, considering Libellant's lack of education and inability to select proper investments, I think the 3% figure is proper.")

"It is difficult to measure pain and suffering in dollars and cents; but Libellant was, and is, hurt, and hurt badly. I award $15,000 for physical pain and mental anguish.

"Decree will be for Libellant for a total of $67,955.35. The Clerk will notify counsel to submit a decree accordingly."