**IMPERIAL OIL, Limited, Appellant,**
v.
**Frank DRLIK, Appellee.**
**No. 12613.**

United States Court of Appeals
Sixth Circuit.
June 5, 1956.

6

Lucian Y. Ray, Cleveland, Ohio (H. W. D. Kilgour, McCreary, Hinslea & Ray, Cleveland, Ohio, on the brief), for appellant.

J. Harold Traverse, Cleveland, Ohio (Edward J. Hagerty, Miller, Hagerty & Shoemaker, Toledo, Ohio, on the brief), for appellee.

Before SIMONS, Chief Judge, and ALLEN and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The appellee, Frank Drlik, brought this action in Admiralty to recover for injuries sustained by him while acting as a member of a dock crew in connection with the undocking of appellant's Steamer Imperial Leduc. The District

Judge, hearing the case without a jury, entered judgment in his favor in the sum of $64,950.00, from which this appeal was taken.

The Imperial Leduc had been materially damaged as the result of an explosion and fire, and at the time of the accident on August 8, 1952, was being repaired by the American Ship Building Company at its Toledo, Ohio, Yard. Appellee was an employee of the American Ship Building Company. The vessel was in drydock preparatory to being undocked for removal to an adjacent pier to complete repairs. She was headed bow in, with four of her mooring cables running from winches on her deck to spiles located ashore, which held her in a proper position while the drydock was being flooded.

The movement of the vessel aft into the river was being accomplished by moving cables from spiles to which they were already attached to spiles closer to the river, whereupon the drawing taut of such cables would accomplish such result. The tightening of the cables was caused by the turning on of a winch engine on the deck of the vessel by its operator Pether, appellant's employee. After applying force and tension to the cable it would then be released by the winch operator which would provide slack in the cable and allow it to be moved by the dock crew and its "eye" placed over the next spile. The vessel was twelve feet from each side of the drydock and its deck some fifteen feet higher than the dock. When operating the winch Pether was not able to see the dock crew handling the cables. Appellant had no employee as watchman at the rail while Pether was operating the winch, who could advise Pether of the movements of the dock crew.

The handling of the shore end of the cables in moving them from spile to spile was being performed by ship yard employees, one of whom was the appellee. Drlik's companions handled the "eye" end of the cable which was to be placed over the spile while Drlik handled the slack part of the cable between his companions and the ship. During the movement along the dock the slack of the cable became caught several times on the end of railroad ties of the railroad which ran alongside of the drydock and Drlik would reach down to extricate the cable from such tie. At the time of the accident Drlik was in a stooped position with both hands on the cable just after having extricated it from a tie and just as his companions dropped the "eye" over the spile. The winch operator, unexpectedly and without warning, set the winch in motion, causing the cable to become taut with great force, which threw Drlik into the air landing on his head and side upon the railroad tracks.

In operating the winch engine Pether went some four or five times from the engine on the starboard side of the ship to its port side where Drlik and his companions were working and made visual observations for the purpose of determining when to apply and when to release the force and tension on the cable. The final application of force resulting in the accident was made by Pether without any signal from the dock so to do or from Pether to the dock that he so intended, but was solely on Pether's observation as made the last time he was at the rail before returning to the winch engine.

It was alleged in the libel that the injuries suffered by the appellee were directly caused by the unseaworthiness of the vessel and by the negligence of the appellant; that the vessel was unseaworthy in that no watchman was stationed at the side of the vessel to advise the winch operator as to the presence of dock employees near the cable, and that the winch operator was incompetent to perform his work as appellant well knew, under the conditions then existing; and that the appellant was negligent in failing to observe the presence of the appellee with the cable in his hand before starting the winch, in failing to warn appellee of its intention to operate the winch while appellee was working with the dock end of it, and in creating for the appellee an unsafe place to do his

work. The appellant denied the allegations of unseaworthiness and negligence and pleaded affirmatively the defenses of assumption of risk and contributory negligence on the part of the appellee. Both of these defenses are based on the contention that Drlik knew, or in the exercise of reasonable care should have known, that there was no watchman at the rail other than when Pether was there, and that Pether was operating the winch engine without the assistance of such a watchman to advise him of the movements of the dock crew.

The District Judge made a finding that the failure of the officers of the ship to post a watchman at the rail or to give warning to the dock crew in any form was the proximate cause of appellee's injuries; that the ship's officers had a duty to post a watchman at the rail for such purpose; that the winch operator had a duty not to operate the winch without a watchman posted at the rail; and that such failure on the part of the appellant constituted "unseaworthiness of the vessel and negligence and created for libelant an unsafe place in which to work." He also ruled that on the facts there was a failure to establish that appellee was guilty of sole or contributory negligence or that there was an assumption of risk upon his part.

█ We first consider the finding of unseaworthiness. If that finding is approved the defense of assumption of risk is eliminated as a matter of law as such defense is not applicable to liability based on that ground. Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 428–429, 59 S.Ct. 262, 83 L.Ed. 265; Mahnich v. Southern S. S. Co., 321 U.S. 96, 103, 64 S.Ct. 455, 88 L.Ed. 561; The Seeandbee, 6 Cir., 102 F.2d 577, 581. Appellant contends that on the undisputed facts the finding of unseaworthiness is erroneous as a matter of law.

█ The Admiralty rule that the vessel and its owner are liable to indemnify a seaman for injury caused by unseaworthiness of the vessel or its appurtenant appliances and equipment has been the settled law since the Supreme Court's ruling to that effect in The Osceola, 189 U.S. 158, 175, 23 S.Ct. 483, 47 L.Ed. 760. Mahnick v. Southern S. S. Co., supra, 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561. The rule has lately been extended to stevedores and others doing a seaman's work and incurring a seaman's hazards, although not in the employ of the owner of the vessel. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099; Pope & Talbot, Inc., v. Hawn, 346 U.S. 406, 412–413, 74 S.Ct. 202, 98 L.Ed. 143; Alaska Steamship Co. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798. Appellee would fall within the protection of the rule so extended. However, in the present case there was no evidence that the vessel or any part of her equipment was defective. The accident arose out of the negligent use of seaworthy equipment. The obligation of the vessel owner to provide seaworthy appliances has not been extended to require the owner to keep those appliances from being used in a negligent manner. If so used, liability rests upon negligence rather than upon unseaworthiness. Burkholder v. United States, D.C.E.D.Pa., 60 F.Supp. 700.

Appellee relies upon Poignant v. United States, 2 Cir., 225 F.2d 595, as establishing a different rule. However, liability in that case was based upon the temporary presence of a foreign substance on the floor of a public corridor, which, in our opinion, is not an analogous question. Nor do we find any merit in appellee's additional contention that the vessel was unseaworthy due to inadequate and incompetent personnel. There was no finding by the District Judge that the operator of the winch was not competent. The evidence, on the contrary, indicates that he was an experienced seaman. Although there was a failure to post a watchman at the port rail, the evidence does not show that a man was not available for this particular duty if the ship's officer had decided to use one for that purpose.

█ Liability in the present case must accordingly rest upon negligence.

Appellant does not challenge the finding of negligence, but contends that the defenses of assumption of risk and contributory negligence are applicable when liability is based on that ground. Although these are well recognized defenses at common law, the common law rules are not controlling in Admiralty. Southern Pacific Co. v. Jensen, 244 U.S. 205, 215, 37 S.Ct. 524, 61 L.Ed. 1086. Dealing first with the defense of assumption of risk, appellant contends that it is applicable to the present case, and if sustained by the facts, is a bar to any recovery, relying upon Scheffler v. Moran Towing & Transportation Co., Inc., 2 Cir., 68 F.2d 11, 12, Skolar v. Lehigh Valley R. Co., 2 Cir., 60 F.2d 893, The Scandinavia, D.C.Me., 156 F. 403, and other authorities referred to in those opinions. See also: Gaderson v. Texas Contracting Co., 5 Cir., 3 F.2d 140. Appellee contends that the defense is not applicable, relying upon Socony-Vacuum Oil Co. v. Smith, supra, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265. See also The Arizona v. Anelich, 298 U.S. 110, 56 S.Ct. 707, 80 L.Ed. 1075.

The foregoing cases indicate that in cases involving a maritime tort, where the libelant was not a seaman, the defense of assumption of risk was applicable. However, in the Supreme Court cases above referred to, it was held that in an action by a seaman for personal injuries under the Jones Act, Sec. 688, Title 46 U.S.Code Annotated, where liability is dependent upon negligence, the defense is not applicable. Appellant contends that the Jones Act is limited to seamen, that the Supreme Court ruling is accordingly limited to seamen, and that appellee was not a seaman. However, the cases relied upon by appellant holding that the defense was applicable to libelants who were not seamen, were decided prior to the recent rulings of the Supreme Court which have apparently eliminated distinctions heretofore recognized in Admiralty between seamen on the one hand and stevedores and independent contractors performing maritime services for a vessel on navigable waters on the other hand. Seas Shipping Co. v. Sieracki, supra, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099; Pope & Talbot, Inc., v. Hawn, supra, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143; Alaska Steamship Co. v. Petterson, supra, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798.

We recognize that those Supreme Court cases dealt with liability based on unseaworthiness rather than on negligence. But, as pointed out previously, the Supreme Court has also held that assumption of risk is not a defense to a right of action by a seaman based on negligence. The Arizona v. Anelich, supra, 298 U.S. 110, 56 S.Ct. 707, 80 L.Ed. 1075. We think the rationale of these cases leads to the conclusion that assumption of risk is not a defense to the present action based on negligence, even though the appellee was not technically employed by the appellant as a seaman. International Stevedoring Co. v. Haverty, 272 U.S. 50, 52, 47 S.Ct. 19, 71 L.Ed. 157. As said by the Court in Socony-Vacuum Oil Co. v. Smith, supra, 305 U.S. 424, at page 429, 59 S.Ct. 262, at page 266, 83 L.Ed. 265, "Any rule of assumption of risk in admiralty, whatever its scope, must be applied in conjunction with the established admiralty doctrine of comparative negligence and in harmony with it. Under that doctrine contributory negligence, however gross, is not a bar to recovery but only mitigates damages."

Turning to appellant's remaining defense of contributory negligence, there is no question about its legal applicability, though in a different form from its applicability at common law. In cases of maritime tort founded upon negligence and prosecuted in admiralty contributory negligence on the part of the libelant is not a bar to his recovery but operates in mitigation of damages. The Max Morris, 137 U.S. 1, 11 S.Ct. 29, 34 L.Ed. 586; Pope & Talbot, Inc., v. Hawn, supra, 346 U.S. 406, 408–409, 74 S.Ct. 202, 98 L.Ed. 143.

The District Judge, in making his finding that appellee was not guilty

of contributory negligence, stated that Drlik's task was to watch the cable and that his attention was necessarily engaged in extricating it from the railroad ties, which required his constant visual attention to the cable itself, and which distracted from any opportunity on his part to watch the rail of the ship whose deck was fifteen feet above the dock on which he worked. That he knew or should have known that Pether was operating the winch engine without a watchman at the rail assisting him is not conclusively established by the evidence. The issue was a factual one. Gardner v. Michigan Central Railroad Co., 150 U.S. 349, 361, 14 S.Ct. 140, 37 L.Ed. 1107; Foster v. Buckner, 6 Cir., 203 F. 2d 527, 530. Not being clearly erroneous it will not be disturbed on this review. McAllister v. United States, 348 U.S. 19, 20, 75 S.Ct. 6, 99 L.Ed. 20; United States v. Standard Oil Co. of Kentucky, 6 Cir., 217 F.2d 539, 540.

The appellant suffered severe injuries. He was rendered unconscious and was taken by ambulance to St. Vincent's Hospital in Toledo. There was a small laceration at the base of his skull. X-Rays and digital examination revealed fractures of the first through the fifth or sixth ribs. There were fractures of the left shoulder, the middle third of the fibula on the right, and of both bones of the left ankle. He developed severe phlebitis of the right leg, some involvement of the left leg, and a chest complication. He was discharged from the hospital on September 23, 1952, at which time he was using a cane. Following his discharge from the hospital his doctor made two house calls and after that saw him periodically at the doctor's office. He complained of headaches and dizziness over a period of time, by reason of which he was sent to St. Charles Hospital in March 1954 for observation and treatment. An examination on January 11, 1955, shortly after the start of the trial showed a continuance of the dizzy spells about twice a week, some pain in the head, an impairment of hearing in one ear and damage to the eighth cranial nerve, the nerve of hearing and balance. There was medical testimony that no improvement could be expected and that his condition was permanent. Dr. Gould, who made this final examination, testified that Drlik was "suffering from a distressful condition and at the same time any attempt at work certainly would be both under duress and, in my opinion, dangerous."

Drlik was 62 at the time of the accident and was past 64 at the time of the trial. He had a life expectancy of 14.02 years, which for the purposes of a present lump sum payment was discounted to 9.25. In rendering the judgment, the District Judge divided the total amount into two parts, namely, the sum of $44,-550.00 for loss of wages past and for the rest of his prospective life, and $20,400.-00 for pain and suffering, making a total award of $64,950.00.

The District Judge explained his award of $20,400.00 for pain and suffering in the following way: For the first month of great misery and suffering—$100.00 a day, totaling $3,000 for the month; for the second month—$50.-00 a day, for a total of $1,500.00; for the next four months—$20.00 a day, for a total of $2,400.00; for the next two years—$100.00 a month for a total of $2,400.00; for the balance of his life—$100.00 a month or $1,200 a year, discounted at the rate of 9.25, which made a total of $11,100.00, and an overall total of $20,400.00: Appellant contends that this portion of the judgment is excessive insofar as it exceeds $10,000. It criticizes the method adopted by the Court as being novel and contends that damages for pain and suffering can not be properly computed by such a mathematical formula.

In awarding damages for pain and suffering there can not be any fixed measure of compensation. The result necessarily rests in the good sense and deliberate judgment of the tribunal assigned by law to ascertain what is just compensation. The City of Panama, 101 U.S. 453, 464, 25 L.Ed. 1061; National Bulk Carriers v. Hall, 5 Cir., 152 F.2d

658. An award will not be set aside by a reviewing court unless it is so large as to strike the court that it is manifestly unjust, such as being the result of passion or prejudice or a disregard of the evidence or the rules of law. Detroit, T. & I. R. Co. v. Hahn, 6 Cir., 47 F.2d 59, 60. Cf. Great Lakes Greyhound Bus Lines v. Hightower, 6 Cir., 163 F.2d 1016. In our opinion, the amount of this portion of the judgment is not manifestly unjust, and the appellant in its brief expressly disclaims any contention that the District Judge acted through passion or prejudice.

 It remains to be considered whether the method used by the District Judge in determining the total amount was error as a matter of law. It may be that it was a novel one but it does not follow that it invalidates the award. In determining the amount of an award for pain and suffering a juror or judge should necessarily be guided by some reasonable and practical considerations. It should not be a blind guess or the pulling of a figure out of the air. At the same time there is no exact or precise measuring stick. Exact compensation is impossible in the abstract but the juror or judge should endeavor to make a reasonable or sane estimate. The practical considerations influencing a particular juror or judge or the reasoning used by him may very well differ with the method used by another juror or judge, yet each of such different methods or modes of reasoning may be a reasonable method of reaching the desired result. We are more concerned with the result, reached by a reasonable process of reasoning and consistent with the evidence, than we are with which one of several suitable formulas was actually used by the juror or judge. It is not necessary for us to adopt the method used by the District Judge as a rule of law for the proper disposition of such an issue, and we do not do so. In our opinion, it was not an arbitrary or unreasonable approach to the problem presented and its application was so adjusted in the present case as to be consistent with the evidence and to reach a result which does not appear to us to be manifestly unjust. United States v. Puscedu, 5 Cir., 224 F.2d 5; City of Knoxville, Tenn. v. Bailey, 6 Cir., 222 F.2d 520, 531.

 One who is injured in his person by the wrongful act of another may recover loss of time resulting therefrom and consequent loss of earnings, including future earnings, provided they are shown with reasonable certainty and are not merely speculative in character. The measure of damages in this field is fairly definite, and the amount awarded is controlled by what the evidence shows concerning the earning capacity of the injured person before and after the accident. The District Judge, in making the award on this phase of the case, allowed $11,250.00 for loss of earnings for the 2½ years between the accident and the trial, and $33,300.00 for loss of earning in the future. Appellant contends that both of these amounts are excessive.

 For the year immediately prior to the accident appellee earned $4,530.44, of which $3,224.04 was for 1917 hours of straight time. The remainder was for 831¾ hours of overtime and premium overtime. For the three previous years ending in August 1951, 1950 and 1949 his earnings were $3,747.36, $3,197.87, and $3,672.44. For the 2½ years prior to the trial the District Judge computed the award on the basis of $4,530.00. He used this higher rate on the assumption that the years 1953 and 1954 would have been as good for appellant as the year immediately preceding because of the large amount of steel produced in those years. There was no evidence concerning the production of steel in those years. The Court declined to admit evidence offered by the appellant as to the number of drydockings of the American Ship Building Company from 1950 to 1954 on the ground that it was speculative. For the years subsequent to the trial the Court used the average of the three years ending August 1949–1951, namely approximately $3,600. We do not believe the evidence justified using the highest rate of the four preceding

years, including the substantial amount of overtime in that year without any proof of its probable reoccurrence, as the basis for the 2½ years prior to the trial. A fairer method, and one as favorable as the appellee could ask for under the evidence, would seem to be the average of the four years immediately preceding the accident, namely $3,787.00. Porello v. United States, 2 Cir., 153 F. 2d 605, 608; 330 U.S. 446, 67 S.Ct. 847, 91 L.Ed. 1011; Carroll v. United States, 2 Cir., 133 F.2d 690, 694. The difference of approximately $1,783.00 appears excessive.

 We find no merit in appellant's contention that the District Judge gave no consideration to the possibility that appellee could be gainfully employed in the future in work of sedentary character which would not involve being in the presence of moving machinery or climbing around on heights. There was medical testimony that this was possible, but the evidence as a whole sustains the ruling that the appellee was unemployable. . . .

We believe, however, that the award for lost wages in the future failed to give adequate consideration to the advancing age of appellee through the end of his life expectancy, the probable inability of appellee to continue full time employment until 78 years of age in a field of physical and sometimes hazardous labor, and the other hazards of continuous employment to which every employee is normally subject in our present industrial system. Thompson v. Camp, 6 Cir., 163 F.2d 396, 403; Vicksburg & M. R. Co. v. Putnam, 118 U.S. 545, 7 S.Ct. 1, 30 L.Ed. 257; Florida East Coast R. Co. v. Young, 104 Fla. 541, 140 So. 467, 87 A.L.R. 905; Mazziotte v. Bridgeport & W. Passenger Service, 116 Conn. 32, 163 A. 409, 87 A.L.R. 908. On review in admiralty, the Court of Appeals can increase or decrease the amount of the award. Standard Oil Co. of New Jersey v. Southern Pacific Co., 268 U.S. 146, 155, 160, 45 S.Ct. 465, 69 L.Ed. 890; Carroll v. United States, su-

pra, 2 Cir., 133 F.2d 690, 694; Dyke v. Massett, 5 Cir., 187 F.2d 895, 896; Fauntleroy v. Argonaut S. S. Line, 4 Cir., 31 F.2d 941, 942. This part of the award will be reduced by approximately 25% to $25,000.00.

The judgment in the amount of $64,-950.00 is reduced by the two amounts hereinabove indicated to $54,867.00 and as so modified, is affirmed.