265 F.2d 455
 William Luther BLANKENSHIP, Appellant,
v.
ELLERMAN'S WILSON LINE NEW YORK, INC., a body corporate, Appellee.
ELLERMAN'S WILSON LINE NEW YORK, INC., a body corporate, Appellant,
v.
ORIOLE SHIP CEILING CO., INC., Appellee.
 No. 7701.
 United States Court of Appeals Fourth Circuit.
 Argued November 4, 1958.
 Decided April 6, 1959.
 
 Hyman A. Pressman, Baltimore, Md., for William Luther Blankenship.
 Randall C. Coleman, Jr., Baltimore, Md. (Ober, Williams, Grimes & Stinson, and Southgate Morison, Baltimore, Md., on brief), for Ellerman's Wilson Line New York, Inc.
 Jeffrey B. Smith, Baltimore, Md. (Clark, Smith & Prendergast, Baltimore, Md., on brief) for Oriole Ship Ceiling Co., Inc.
 Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.
 SOPER, Circuit Judge.
 
 
 1
 This civil action was brought by William Luther Blankenship against Ellerman's Wilson Line New York, Inc., owner of the SS Bassano, for injuries suffered by him on February 26, 1956, in the nighttime, while engaged as a carpenter in repairing and constructing grain fittings in the No. 2 hold of the ship in the Port of Baltimore.
 
 
 2
 The complainant and nine other carpenters were employed by Oriole Ship Ceiling Co., Inc., the contractor in charge of the work. During the progress of the work the complainant was engaged in nailing a niece of timber to the wall of the hold while standing on a scaffold and the other carpenters in the gang were hoisting excess lumber out of the hold by means of a winch and cable. In so doing the draft of boards came in contact with the scaffold and dislodged it, causing the complainant to fall a distance of 10 feet to the bottom of the hold and to sustain substantial injuries.
 
 
 3
 The gist of the action is that the accident was due to insufficient lighting in the hold and that the owner of the ship failed in its duty to furnish a seaworthy vessel and also neglected to furnish a safe place for the complainant to work. The owner filed a third-party complaint against Oriole, alleging that the complainant's injuries were due to the negligence of Oriole's employees. Oriole filed an answer and joined issue on this charge.
 
 
 4
 The evidence on the question of lighting was conflicting. There was testimony that two clusters of lights were furnished by the ship and lowered into the hold by the carpenters; that each cluster consisted of five or six bulbs, of which one-third were burned out; that it was the regular practice to use four clusters, one in each corner of the hold, for such work; and that it was a dark night and the lighting was insufficient. There was also evidence that the carpenters from time to time asked members of the crew for more lights but were told that no more lights were available.
 
 
 5
 On the other hand there was testimony that three 250-watt electric bulbs, and not clusters of lights, were furnished by the ship and installed in the hold, which afforded adequate light for the purpose — as good as that furnished at any other time — and that no one complained to the foreman of Oriole or asked for additional lights, which Oriole could have furnished if needed.
 
 
 6
 The case was submitted to the jury on four issues, as follows:
 
 
 7
 1. Did any unseaworthiness of the SS Bassano cause or contribute to the accident of which the plaintiff complains? Yes ____ No ____
 
 
 8
 If question 1 is answered "No", it is not necessary to answer the other questions.
 
 
 9
 2. If question 1 is answered "Yes", was such unseaworthiness caused by any negligence on the part of Oriole Ship Ceiling Company or of any officer or employee of said Company? Yes ____ No ____
 
 
 10
 3. Did any negligence of the plaintiff cause or contribute to the accident of which he complains? Yes ____ No ____
 
 
 11
 4. Was the accident of which the plaintiff complains the result of risks or hazards which he voluntarily assumed? Yes ____ No ____
 
 
 12
 The jury answered the first question "No" in favor of the ship owner so that it was not necessary for them to answer the remaining questions. The court entered judgment on the verdict in favor of the owner of the ship and of the third-party defendant against the complainant for costs and dismissed the third-party complaint without prejudice since it had become moot.
 
 
 13
 On this appeal it is contended, first, that the judge erred in holding that there was no evidence legally sufficient to prove that the plaintiff was injured by the negligence of the defendant and in refusing to submit a separate question on this subject to the jury. The judge based this ruling on the ground that there was no claim and no evidence that any officer or member of the crew or any agent of the defendant was negligent in any way except insofar as there was evidence of failure on the part of the ship to furnish adequate lighting for the work that was in progress, and that this matter was placed in the light most favorable to the plaintiff in the charge to the jury on the subject of seaworthiness. The jury were told that it was the duty of the owner of the ship to provide a seaworthy ship with appurtenant appliances and equipment, that this duty was absolute and not dependent upon negligence, that it was inalienable and continuing, and that proof of injury caused by the existence of unseaworthiness was all that was necessary to impose liability on the owner of the ship. Under these circumstances there was no error on the part of the judge and no prejudice to the plaintiff.
 
 
 14
 In the next place, the plaintiff contends that the judge erred in refusing to instruct the jury that the ship owner was not relieved from liability to the plaintiff if he was injured by reason of the unseaworthiness of the ship merely because the unseaworthiness was attributable to the negligence of his fellow employees rather than the negligence of the owner. This argument relates to evidence tending to show that the plaintiff's fellow workmen, in removing the draft of lumber from the hold, negligently displaced the lighting appliances so that they thereupon became inadequate. It is contended that if the jury should find that such a state of affairs existed, then there would be a breach of the duty of the owner to furnish a seaworthy ship with its attendant liability under such decisions as Mahnich v. Southern S.S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561, and Petterson v. Alaska S.S. Co., 9 Cir., 205 F.2d 478, affirmed 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798.
 
 
 15
 We do not think that this position is tenable. The established rule in admiralty in the United States prior to legislative changes was that a seaman could recover damages for unseaworthiness but could not recover damages for the negligence of a ship's officer or member of a crew, The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760; Mahnich v. Southern S. S. Co., supra, 321 U.S. at page 99, 64 S.Ct. at page 457; and the courts have not as yet generally accepted the view that the obligation of seaworthiness has been so extended that a seaman may now recover damages from the shipowner for injuries caused by the negligence of a stevedoring contractor contemporaneous with the use of seaworthy appliances whereby a condition of unseaworthiness is created. See Freitas v. Pacific-Atlantic S. S. Co., 9 Cir., 218 F.2d 562; Imperial Oil Ltd. v. Drlik, 6 Cir., 234 F.2d 4; Crumady v. The Joachim Hendrik Fisser, 3 Cir., 249 F.2d 818, certiorari granted, 357 U.S. 903, 78 S. Ct. 1150, 2 L.Ed.2d 1154. (The judgment of the Court of Appeals in the last mentioned case was reversed by the Supreme Court on the ground that its finding that the vessel was seaworthy was erroneous, 79 S.Ct. 445. Cf. Grillea v. United States, 2 Cir., 232 F.2d 919; Titus v. Santorini, 9 Cir., 258 F.2d 352, 355; Petterson v. Alaska S. S. Co., 9 Cir., 205 F.2d 478, affirmed 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798.
 
 
 16
 The plaintiff also contends, under the authority of Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L. Ed. 1099, that there was error in refusing an instruction requested by him that he and the other carpenters employed by Oriole became members of the crew while working on the ship, and hence the shipowner became liable to him for injuries caused by their negligence. Sieracki does not support this proposition. Liability in that case was not based on the negligence of the shipowner. It extended the obligation of seaworthiness, traditionally owed by the shipowner to the seaman, to include stevedores working on board the ship as employees of an independent contractor. It did not extend the liability of the shipowner for negligence of members of the crew to include liability for the negligence of employees of an independent contractor.* See Fireman's Fund Indemnity Co. v. United States, 5 Cir., 211 F.2d 773; Berti v. Compagnie De Navigation Cyprien Fabre, 2 Cir., 213 F.2d 397; Freitas v. Pacific-Atlantic S. S. Co., 9 Cir., 218 F.2d 562; Crumady v. The Joachim Hendrik Fisser, 3 Cir., 249 F.2d 818, certiorari granted 357 U.S. 903, 78 S.Ct. 1150, 2 L.Ed.2d 1154; Ventrone v. United States, 134 F.Supp. 169, affirmed 2 Cir., 239 F.2d 862.
 
 
 17
 There remains the question that the judge erred not only in refusing the plaintiff's request to instruct the jury that the plaintiff in the performance of his duties was not deemed to assume the risk of unseaworthy appliances, but also in submitting to the jury at the request of the defendant the question whether the accident was the result of risks or hazards which the plaintiff voluntarily assumed. The plaintiff did not request an instruction as to the assumption of the risk as a separate proposition of law but coupled it with the instruction that the ship owner was liable to the plaintiff if he was injured as a result of unseaworthiness even if the unseaworthiness was attributable to the negligence of his fellow workers. Since the last mentioned position was unsound, for the reasons indicated above, the instruction was properly refused and in this respect the plaintiff has no just cause of complaint. However, the plaintiff objected separately to the submission of the issue of the assumption of the risk on the ground that it was not appropriate in a case involving unseaworthiness, and hence the matter was specifically drawn to the attention of the court. The judge was of the view that assumption of the risk is not a defense to a condition of unseaworthiness. Nevertheless, being uncertain as to what the final decision on the question might be in the appellate courts, he submitted the issue so that the fact might be established one way or the other for the aid of the courts in reaching a final determination.
 
 
 18
 The jury were told that if they found in answer to the first question that unseaworthiness of the ship did not cause or contribute to the accident, they need give no consideration to the remaining questions. They answered the first question in the negative, and on this account the ship owner contends that the plaintiff suffered no harm from the submission of the fourth question to the jury. We are unable to accept this view. The testimony on the question of seaworthiness was so conflicting that it would have supported a finding either way and the jury were told that in order to find in the plaintiff's favor on this matter, they must not only find unseaworthiness but also that it was the cause of the accident. At the same time the question of the assumption of the risk was also submitted and the jury were told that it comes into play when a person knows that what he is doing constitutes a very definite hazard and yet voluntarily assumes it. Keeping this instruction in mind, the jury might have concluded that the lighting in the hold was bad and yet answered the first question in the negative on the ground that the plaintiff knowingly assumed the risk and that this action on his part rather than the failure of the ship was the cause of his injury. This possibility makes it clear that when the question of the assumption of the risk was submitted to the jury they should have been told that it had no bearing on the first question, for it is clearly established that assumption of the risk is no defense to unseaworthiness. The Arizona v. Anelich, 298 U.S. 110, 112-123, 56 S.Ct. 707, 80 L. Ed. 1075; Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 428-429, 59 S.Ct. 262, 83 L.Ed. 265; Mahnich v. Southern S. S. Co., 321 U.S. 96, 103, 64 S.Ct. 455, 88 L.Ed. 561; Imperial Oil Ltd. v. Drlik, 6 Cir., 234 F.2d 4, 8, certiorari denied 352 U.S. 941, 77 S.Ct. 261, 1 L.Ed.2d 236; Klimaszewski v. Pacific-Atlantic S. S. Co., 3 Cir., 246 F.2d 875, 877.
 
 
 19
 The judgment of the District Court must therefore be reversed and the case remanded for new trial.
 
 
 20
 Reversed and remanded.
 
 
 21
 SOBELOFF, Chief Judge, concurs in the result.
 
 
 
 Notes:
 
 
 *
 Persons working on ships for independent contractors have always had the right to recover for the negligence of the ship owner although members of the crew have not. Pope & Talbot, Inc., v. Hawn, 346 U.S. 406, 413, 74 S.Ct. 202, 98 L. Ed. 143. The Jones Act, 46 U.S.C.A. § 688, gave seamen this right; but this statute does not support a suit by a ship worker against a ship owner for negligence, even if the ship worker be deemed a seamanpro hac vice, because actions under the statute are maintainable only by employees against their own employer. Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692; Gilmore and Black, The Law of Admiralty § 6-21. The rights of ship workers to recover for negligence of fellow workers are covered by the Longshoremen's Act, 33 U.S.C.A. § 901 et seq., and are limited to the compensation therein provided.