Francisco Vazquez **TORRES**, Plaintiff,

v.

**HAMBURG–AMERIKA LINIE,**
Defendant.

Civ. No. 496–69.

United States District Court,
D. Puerto Rico.

Aug. 14, 1972.

Nachman, Feldstein & Gelpí, San Juan, P. R., for plaintiff.

Hartzell, Ydrach, Mellado, Santiago, Pérez & Novas, San Juan, P. R., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

TOLEDO, District Judge.

This is an action for money damages of a longshoreman injured during the course of the discharge of a vessel.

The facts regarding the occurrence of the accident are expressed in a stipulation of uncontested facts contained in a Pretrial Stipulation and Order, signed and submitted by the parties on November 8, 1971.[1] At the aforementioned pretrial, the parties hereto agreed that there was no issue of fact other than the damages, if any, and that the case concerned only issues of law. Accordingly, the Court ordered that memoranda of law be filed by the parties and the same were filed on November 12, 1971. With its memorandum of law defendant accompanied a motion to dismiss.

■ At the commencement of trial of the above entitled action on November 15, 1971, plaintiff waived his right to trial by jury and presented argument against defendant's motion for dismissal. Plaintiff thereafter submitted his case to the Court on the stipulated facts, reserving however, the right to present evidence concerning his injury, loss of earnings and pain and suffering. After further argument was heard from both parties, the defendant, Hamburg-Amer-

---

1. The uncontested facts contained in the Pretrial Stipulation and Order of November 8, 1971, are the following:

"On September 29, 1968, the plaintiff was employed by an independent stevedoring contractor engaged in the discharge of the M/V Speyer, owned and operated by the defendant. The plaintiff's duties were as a motorman, to transport the discharged cargo from the vessel's side into the shed on the pier. The cargo being discharged consisted of packages of tinplate bound by wires and containing sleepers. A particular package was lowered onto a cart towed by the tractor operated by plaintiff in an upside-down or inversed position with the sleepers on top.

The plaintiff towed the cargo into the shed where a fingerlift was to pick it off the carts, under the sleepers. The finger could not get under the bundle because the package was upside down, thus the sleepers on top, and the plaintiff tried to insert a sleeper underneath the bundle. The forks of the fingerlift were placed under the pried edge but the metal slipped off and the bundle fell on plaintiff's left hand. The plaintiff sustained lacerations and fractures."

ika Linie, moved for non-suit.[2] After hearing the plaintiff in regard to the defendant's oral motion for non-suit, the Court denied the same from the bench. Defendants orally requested a reconsideration, which was equally denied from the bench after argument from both parties was heard.[3] The Court also heard argument from the parties in relation to defendant's motion to dismiss of November 12, 1971 and denied the same.

After having heard counsel for the parties; having considered the oral and documentary evidence presented, as well as the memoranda filed on November 12, 1971, and November 22, 1971, and the additional memoranda requested by the Court on January 5, 1972, on the possible impact of the United States Supreme Court decision in Victory Carriers, Inc. v. Law, 404 U.S. 202, 92 S.Ct. 418, 30 L. Ed.2d 383 (1971) and after due deliberation thereon, the Court hereby makes the following:

## FINDINGS OF FACT

1. The 42-year old plaintiff, Francisco Vazquez Torres, is a citizen and resident of the United States of America and the Commonwealth of Puerto Rico.

2. The defendant, Hamburg-Amerika Linie, at all times pertinent hereto, was and is a business entity duly organized and existing under and by virtue of the laws of the Republic of West Germany.

3. The M/V Speyer, is a motor vessel owned and operated by the defendant Hamburg-Amerika Linie.

4. On September 29, 1968, the plaintiff was employed as a longshoreman by an independent stevedoring contractor, engaged in the discharge of the aforesaid vessel.

5. The cargo being discharged consisted of packages of tinplate bound by wires and containing sleepers.

6. At all times pertinent hereto, the plaintiff was employed as a motorman operating a tractor which towed carts used to transport cargo from alongside the vessel into a shed located on the pier.

7. A particular package was lowered by the ship's tackle onto a cart towed by the tractor operated by plaintiff, in an upside-down or inverse position, with the sleepers on top.

8. Plaintiff towed the aforesaid package with the sleepers on top, into

2. In its oral motion for non-suit, the defendant basically contended that there were no facts before the Court that may justify a decision under the negligence doctrine or under the unseaworthiness doctrine; that the stipulated uncontested facts (see footnote #1), although stipulated, were not enough to establish a case for the plaintiff; that the plaintiff had to present expert witnesses to establish that the uncontested fact that "A particular package was lowered onto a cart towed by the tractor operated by plaintiff in an upside-down or inversed position with the sleepers on top," constitutes negligence and or makes the vessel unseaworthy; and that by stipulating the uncontested facts and presenting no other evidence in relation to those facts the plaintiff failed to discharge his duty to establish a prima facie case.

3. On reconsideration, the defendant asserted that plaintiff had not offered any evidence whatsoever to prove that the defendant had any knowledge of the alleged

unseaworthy or defective condition or that the defendant should have had said knowledge, thus, that there was no evidence to support plaintiff's action for negligence. Plaintiff asserted that knowledge is not a requirement to establish negligence on the part of the defendant, citing Gutierrez v. Waterman Steamship Corporation, 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963). The defendant counter-asserted that the Gutierrez case deals only with admiralty, and that said case is not determinative in relation to the issue of negligence, but that it is the Civil Code of Puerto Rico, Title 31, Laws of Puerto Rico Annotated, which is determinative. This Court likewise denied defendant's oral motion for reconsideration, for in a case involving a maritime tort, it is the federal admiralty law that governs and not state concepts. Pope & Talbott v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953); Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959).

the shed where a fingerlift was to lift it off the cart.

9. The forks of the fingerlift could not get under the package of tinplate because the package was upside-down, and rested flush against the cart.

10. While plaintiff was attempting to insert a sleeper underneath the package with the aid of the forklift, which had placed its forks under the pried edge of the package, the package of tinplate slipped off the forks of the fingerlift and fell onto plaintiff's left hand.

11. As a result of the occurrence hereinabove described, the plaintiff sustained personal injuries consisting of fractures of the second metacarpal of the left hand, and a laceration of the middle finger of the left hand; injuries which left a 10% permanent disability in said hand.

12. There was no way to remove that cargo from the cart without the risk of injury and hence, an unseaworthy condition had been created aboard the vessel.

13. The defendant produced as an expert witness, Mr. Victor R. Bericochea. The defendant did not elicit testimony from its expert as to whether the condition caused by the discharge of the tinplate in an inverse position was unseaworthy, nor as to whether it was negligently discharged. In fact, the defendant objected to any cross-examination of the expert on these issues. The expert merely testified that there were alternative methods of lifting the tinplate from the cart, once the discharged cargo was in the shed.

The sole purpose of the aforementioned testimony was to establish the defense of comparative negligence. The Court has carefully weighed the testimony of the expert, including his qualifications, and gives this testimony no credence. The Court finds that of all alternative courses of action available to plaintiff, he selected the most reasonable course under the circumstances.

In view of the foregoing Findings of Fact, the Court makes the following:

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and subject matter of this action pursuant to Title 28, United States Code, Section 1332.

■ 2. A shipowner is under a nondelegable duty to provide persons who perform work traditionally performed by seaman, with a seaworthy vessel, appliances and appurtenances. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S. Ct. 872, 90 L.Ed. 1099 (1946).

■ 3. A longshoreman is not entitled to a warranty of seaworthiness if injured ashore by shore based equipment that is not an appurtenance of the vessel or used in the loading or discharging operations under the control of the vessel and its crew. Victory Carriers, Inc. v. Law, 404 U.S. 202, 92 S.Ct. 418, 30 L. Ed.2d 383 (1971).

■ 4. A longshoreman, even if injured ashore, is still entitled to the warranty of seaworthiness, if injured by an appurtenance of a vessel located on navigable waters. Admiralty Extension Act, Title 46, United States Code, Section 740; 62 Stat. 496 (1948); Victory Carriers, Inc. v. Law, supra; Gutierrez v. Waterman Steamship Corp., 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963); Green v. Pope & Talbott, Inc., reported sub nom; Snydor v. Villain & Fassio et Compañia Int. Di Genova, etc., (4 Cir., 1972), 459 F.2d 365.

■ 5. Defective cargo containers are appurtenances of the vessel. Gutierrez v. Waterman Steamship Corp., supra.

■ 6. The accident herein was not a pier-side accident caused by a stevedore's pier-based equipment, but a pier-based accident caused by defendant's discharge, in an unsafe, hazardous and unseaworthy manner, of defective cargo emanating from a vessel in navigable waters under the control of defendant's crew. Victory Carriers, Inc. v. Law, supra; Snydor v. Villain & Fassio et Compañia Int. Di Genova, etc. (4 Cir., 1972), 459 F.2d 365.

7. The cargo being discharged herein was unseaworthy in that it was discharged upside-down with its sleepers on top, making it unfit for the purpose of reasonably safe discharge. Gutierrez v. Waterman Steamship Corp., supra. The complete cargo draft was defective when it left the vessel. Green v. Pope & Talbott, Inc., supra.

8. Neither the improper slinging of the draft of tinplate, its being lowered onto a cart in an upside-down position, or the lifting of the draft of tinplate by the forks of the fingerlift was a single isolated act of negligence on the part of the plaintiff's fellow workmen, Usner v. Luckenbach Overseas Corporation, 400 U.S. 494, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971), but was the culmination of a condition that arose aboard the vessel which rendered the vessel unseaworthy.

9. A longshoreman is not guilty of comparative negligence in following customary procedure which constitutes the most reasonable course under the circumstances. Rivera v. Rederi A/B Nordstjernan, et al (1 Cir. 1972), 456 F.2d 970; Burrage v. Flota Mercante Grancolombiana (5 Cir. 1970), 431 F.2d 1229; Bryant v. Partenreederei Ernest Russ (4 Cir. 1965), 352 F.2d 614.

10. In determining the compensation to be paid to the plaintiff, this Court makes a detailed appraisal of the evidence bearing on damages. Ganapolsky v. Park Gardens Development Corporation, et al. (1 Cir. 1971), 439 F.2d 844, 846.

11. The reasonable value of the pain and suffering, mental anguish and probability of future discomfort the plaintiff will suffer, because of the ten percent (10%) permanent disability on his left hand resulting from the event of the bundle falling over it, is the amount of $4,000.00. Imperial Oil, Ltd. v. Drlik (6 Cir. 1956), 234 F.2d 4.

12. As to the special damages, the Pretrial Stipulation and Order of November 8, 1971, shows the plaintiff claimed $1,200.00 for loss of earnings, $500.00 as reasonable value of medical expenses and $2,250.00 as loss of earnings potential, for a total amount of $3,950.00. The defendant disagreed with the estimate of special damages made by the plaintiff.

13. The earning record (Exhibits 1 and 2 of Plaintiff), admitted into evidence by the Court, reflects that the plaintiff, who at the time of the occurrence involved herein was 39 years old, had been working an average of 270 hours every three months at the time of the occurrence. Pursuant to stipulation plaintiff, at the time of the accident, was earning $2.68 per hour. Plaintiff's testimony establishes that he was out of work for five months. Based on the foregoing, plaintiff incurred a loss of earnings of $1,206.00.

Defendant presented testimony to the effect that there was a work stoppage at Gulf Puerto Rico Lines on December 4, 1968, which continued until February 4, 1969, during which time only three vessels arrived at the pier where the plaintiff did almost all his work. It contends that even if the plaintiff had been able to work during these forty-three (43) working days, there would have been little or no work available to him, for which reason the plaintiff should not receive compensation for lost earnings for the period comprehended by the strike.

This Court disagrees with the above contention of the defendant. Plaintiff was and is an experienced operator of heavy equipment. The testimony of Alfonso Cutito, Accounting Manager of Gulf Puerto Rico Lines, Inc., merely established that between the aforementioned dates, plaintiff could not have worked regularly as a stevedore for Gulf Puerto Rico Lines, Inc. However, defendant's evidence also revealed that the work stoppage was not absolute, and that the plaintiff could have worked in the loading and discharge of foreign vessels that were not affected by the stoppage. Furthermore, the number of foreign vessels served by Gulf Puerto Rico Lines, Inc. during the work stop-

page was, according to defendant's own admission, no indication of the actual number of vessels that entered the San Juan Harbor during that time. The evidence shows that in the year of the occurrence, the plaintiff worked in three vessels of some other lines. It is, therefore, reasonable to conclude that the plaintiff, had he not been injured, could have worked at any number of piers as a stevedore irrespective of the work stoppage at Gulf Puerto Rico Lines, Inc. Also, disregarding plaintiff's usual source of income, he, as an experienced operator of heavy equipment, was certainly not limited to procuring work on the piers.

14. At trial, no evidence whatsoever was presented as to the reasonable value of the medical services received by plaintiff as a consequence of the occurrence herein. For said reason, this Court cannot compensate the plaintiff for his alleged medical expenses. Ganapolsky v. Park Gardens Development Corp., et al, supra.

15. In relation to the loss of future earnings potential, the plaintiff presented as witness, Dr. Juan Llompart, who concluded that as a result of the accident, the plaintiff has a permanent ten percent (10%) disability as related to the left hand. Defendant contends that this Court cannot grant any compensation for alleged loss of earnings potential in view of the fact that the evidence presented shows that the plaintiff has continued to work since March 1969, in a regular manner and has, in fact, worked more hours and obtained greater earnings since March 1969, than he did from 1966 up to the time of the occurrence; which greater earning exceed by far the increased earnings that would naturally result solely from an increase in the rate of compensation for work performed. This Court is of the opinion that defendant's contention is not appropriate. Admittedly, plaintiff has worked more hours and earned more money after the occurrence of his accident than ever before. Notwithstanding, the evidence shows that it is due to plaintiff's good fortune in being allowed to work in the mechanized loading and unloading of containerized cargo at a salary of $4.60 an hour. If for any reason plaintiff were in the future forced to return to nonmechanized labor, his disability would, without doubt, affect his earnings potential.

Loss of earnings potential is not determined by actual or contemporaneous loss of earnings. Loss of earnings potential is the loss or reduction of the ability or capacity to do something for which a person may and has been remunerated, according to that person's experience and education. The evidence shows that until plaintiff became an operator of heavy equipment, he has always worked on the docks as a manual laborer. If plaintiff were forced to return to heavy manual labor, the weakness of his left hand and consequential inability to grasp, would limit the kind of work he would be able to perform. Certainly, his ability to pick-up, carry and load cargos would be reduced in proportion to his disability.

The Court is of the opinion that the reasonable value of the loss of earning the plaintiff will suffer because of the 10% permanent disability he now suffers during his remaining working years, (23), computed to its present sum using an interest or discount factor of 5%, is the sum of $3,900.00. Waterman Steamship Corp. v. Rodríguez (1 Cir., 1961), 290 F.2d 175; Conte v. Flota Mercante del Estado, (2 Cir., 1960), 277 F.2d 664; Vda. de Seraballs v. Abella Hernández, 90 D.P.R. 368 (1964); Rodríguez v. Ponce Cement Corporation, 98 D.P.R. 201 (1969).

13. In view of the foregoing, the Court determines that the reasonable value of all the damages sustained by the plaintiff is the sum of $9,106.00.

A judgment will be entered accordingly.

**1282**

### JUDGMENT

This action was tried before this Court without a jury on November 15 and November 16, 1971, and having heard counsel for the parties, considered the oral and documentary evidence as well as the memoranda filed, and after due deliberation having been had thereon, and the Court having rendered its Findings of Fact and Conclusions of Law, which are incorporated herein by reference, it is now,

Adjudged and decreed, that the plaintiff recover from defendant Hamburg-Amerika Linie, the sum of $9,106.00, together with interest thereon at the rate of 6% per annum from the date of entry of this judgment until paid, plus costs and disbursements to be hereinafter taxed upon notice.